UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| *In Re* FLYING J REBATE CONTRACT LITIGATION (NO. II) <br><br> *Shoreline Transportation of Alabama USA, Inc. et al. v. Pilot Corporation et al.,* <br><br> *Osborn Transportation, Inc. v. Pilot Corporation et al.,* <br><br> *National Retail Transportation, Inc. et al. v. Pilot Corporation et al.,* <br><br> *FST Express, Inc. v. Pilot Travel Centers, LLC,* <br><br> *HB Logistics LLC v. Pilot Travel Centers, LLC.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Master File No. 14-2515-ART
Civil No. 14-67-ART
Civil No. 14-69-ART
Civil No. 14-70-ART
Civil No. 14-72-ART
Civil No. 14-102-ART

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Seven plaintiffs in this multi-district litigation involving six member cases stretching across five states filed complaints with claims sounding in four broad areas of law:  contract, tort, Racketeer Influenced Corrupt Organization ("RICO")-based laws, and state statutes. Collectively, the plaintiffs seek damages from three classes of defendants:  1) Pilot Corporation and Pilot Travel Centers, LLC (the "Pilot Defendants") 2) affiliates of the Pilot Defendants like Propeller Corporation, and 2) the employees of these businesses.  Though they bring a number of claims under two classes of relief—law and equity—the plaintiffs all believe one thing: the defendants underpaid rebates they pledged to the plaintiffs in exchange for the plaintiffs' commitments to purchase fuel at the defendants' Pilot Flying J travel centers.

The defendants claim the plaintiffs have no basis to bring a lawsuit and filed motions to dismiss the amended complaints.  As explained in detail below, some of the plaintiffs' claims state sufficient facts that allow them to move past the motions to dismiss.  Other plaintiffs, however, pled claims in a manner that will not allow all of their causes of action to get off the ground.

## BACKGROUND

Although they bring slightly different claims against different defendants, plaintiffs Shoreline Transportation, Inc. and Shoreline Transportation of Alabama, USA (collectively, "Shoreline"), Osborn Transportation, Inc. ("Osborn"), National Retail Transportation, Inc. ("NRT"), Keystone Freight Corporation ("KFC"), FST Express, Inc. ("FST") and HB Logistics LLC ("HB") state claims grounded in a common set of facts.

The plaintiffs are all trucking companies who did business with the Pilot Defendants. *See* R. 117 ¶¶ 8–9 (Shoreline's Amended Complaint); R. 25 ¶¶ 11, 13 (Osborn's Amended Complaint); R. 104 ¶¶ 1–2 (NRT and KFC's Second Amended Complaint); R. 112 ¶¶ 1–2 (FST's Third Amended Complaint); R. 113 ¶ 6 (HB's Second Amended Complaint). Specifically, the plaintiffs entered into contracts for discounts and rebates on fuel purchased at Pilot Flying J Travel Centers.  The plaintiffs allege that the Pilot Defendants concocted a widespread interstate scheme to enter into rebate contracts with trucking companies, only to systematically underpay the expected rebate values.  *See* R. 117 ¶¶ 15–22; R. 25 ¶¶ 11–15; R. 104 ¶¶ 34–38; R. 112 ¶¶ 28–31; R. 113 ¶¶ 22–25.  In support of their allegations, the plaintiffs incorporate into their complaints statements from an FBI affidavit in support of a search warrant.  *See* R. 117-1 (FBI Affidavit).  The FBI Affidavit details the results of a

government investigation of Pilot employees for a scheme to "deceptively withhold diesel fuel price rebates and discounts from Pilot customers." *Id.* ¶ 2.

Based on statements by current and former Pilot employees, the investigation revealed the scheme to operate as follows:  The Pilot Defendants' Regional Sales Managers and Regional Account Representatives entered into agreements with trucking company customers to purchase fuel from Pilot Flying J Travel Centers at a discount.  *Id.* ¶¶ 15–17. The details of the agreements varied.  Some customers received "cost plus" rebate deals. Under the "cost plus" deal, the Pilot Defendants only charged the customer the Pilot Defendants' cost of fuel plus a few cents per gallon.  The Pilot Defendants would return any amount that the customer paid over this price.  *See, e.g.*, R. 87-1 at 33 (Criminal enforcement agreement).  Other customers received "retail minus" deals—that is, they received rebates of a few cents per gallon of fuel purchased from a Pilot Flying J Center.  *See id.*  Some customers received discounts at the pump, others received discounts through monthly rebate checks, and others received discounts by direct deposit.  R. 117-1 ¶ 18.   Pilot employees kept track of those customers who were due a rebate at the end of the month in an Excel spreadsheet.  *Id.* ¶ 22.  The spreadsheet also calculated the rebate amount due to each customer.  *Id.*  Pilot employees manually reduced the rebate amounts due in the Excel spreadsheet and underpaid customers accordingly.  *Id.* ¶¶ 22, 25.

According to the Affidavit, Pilot officers were aware of, and participated in, the practice of withholding a portion of monthly rebate checks.  *Id.* ¶ 7.  Occasionally, Pilot officers directed employees over the telephone to reduce rebates due to particular customers. *Id.* ¶ 25.  The Pilot employees reduced rebates in order to make more money for the Pilot

Defendants.  *Id.* ¶ 23.  Officers of the Pilot Defendants thanked employees who facilitated the scheme for saving the company money.  *Id.*

Pilot employees reduced rebates largely undetected by obfuscating the terms of the deal and making it difficult for the customers to discover that they received reduced rebates. *Id.* ¶¶ 28–30.  If customers noticed they were being underpaid, Pilot employees were instructed to blame the shortfalls in rebate credits on computer glitches.  *Id.* ¶ 29.  Moreover, Pilot employees perpetuated the scheme by training other employees on how to reduce rebates undetected.  *Id.* ¶ 60.  On one occasion, Pilot employees held a full-day meeting at a Pilot officer's lake house.  *Id.*  There, Pilot employees acknowledged that they wanted to teach the "next generation" of salespeople how to reduce rebates owed to customers.  *Id.* ¶¶ 60–63.

The FBI Affidavit did not identify any of the plaintiffs in this multidistrict litigation as targets of the scheme.  The Affidavit, however, identifies other trucking companies whose rebates Pilot employees reduced.  *See id.* ¶¶ 24, 39, 47.  But the plaintiffs all claim that they were shortchanged by the same scheme the FBI Affidavit describes.  *See* R. 117 ¶ 18; R. 25 ¶¶ 16–17; R. 104 ¶¶ 39; R. 112 ¶¶ 23–24; R. 113 ¶¶ 17–18.  For this reason, the plaintiffs brought suit against the Pilot Defendants, and in one case, Pilot employees.  *See* R. 104 ¶¶ 7– 18.  The plaintiffs' claims fit into three broad categories:  (1) claims under federal and state Racketeer Influenced Corrupt Organization ("RICO")-based statutes; (2) claims sounding in contract, and (3) claims sounding in fraud.

## DISCUSSION

The Pilot Defendants and individual employees filed motions to dismiss under Federal Rule of Civil Procedure 12(b), alleging the plaintiffs failed to state claims for relief.

4

To survive these challenges, the plaintiffs must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" if the factual allegations raise a "right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiffs need not provide detailed factual allegations in their complaints to clear this pleading hurdle. *See id.* at 555. Neither must the plaintiffs perfectly plead the legal theory supporting the claims they assert. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (per curiam) (affirming that "[f]ederal pleading rules call for a short and plain statement" of the claim for relief and that they do not "countenance dismissal of a complaint" for imperfectly stating the legal basis of relief (internal quotation marks omitted)). The rules require that a complaint contain more than just "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 555. In determining what facts the plaintiff has set forth in the complaint, the Court may consider attached exhibits and materials in the record, so long as the contents are central to the plaintiff's claim. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). And in evaluating complaints, the Court construes well-pleaded factual allegations in the light most favorable to the plaintiffs. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 245 (1989).

Evaluating whether the plaintiffs have stated a claim for relief under applicable law requires the Court to determine what the "applicable law" is. Transferee courts in multidistrict litigation apply the choice-of-law rules of the transferor court when evaluating claims under state law. *See Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 n.2 (6th Cir. 2000). In deciding claims arising under federal law, the transferee court should apply the law of its own circuit without deferring to the interpretation of the transferor circuit. *In re Korean Air*

5

*Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1174 (D.C. Cir. 1987) *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989).  The parties in this litigation do not dispute the choice of law governing any of their claims.

## I.     RICO Claims

Shoreline, NRT, and KFC state claims for relief against the Pilot Defendants under Racketeer Influenced Corrupt Organization ("RICO")-based statutes.  *See* R. 117 at 9–10 (Shoreline's amended complaint stating claims for violation of the RICO statute and conspiracy to commit RICO); R. 104 at 36–48 (NRT and KFC's second amended complaint stating claims for violation of the RICO statute, conspiracy to commit RICO, and violation of the New Jersey RICO statute).  As explained below, NRT and KFC—but not Shoreline— allege sufficient facts to show that the Pilot Defendants and Propeller operated a RICO enterprise where participants had differentiated roles.  Accordingly, only NRT and KFC's RICO claims weather the Pilot Defendants' and Propeller's motions to dismiss.

### A.     The RICO Elements

The federal RICO statute prohibits any person "employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  To establish a violation of the federal RICO statute, plaintiffs must prove the following:  (1) the existence of an enterprise (2) the defendants conducted or participated in the conduct of the enterprise, and (3) the defendants engaged in a pattern of racketeering activity.  *See In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013).

The individual elements of a RICO violation, in turn, have their own specialized meanings.  For example, a defendant may "participate in the conduct" of a RICO enterprise

6

by taking "some part" in directing the "operation or management" of the enterprise.  *See Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2012) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993)).  "Operation or management," in turn, requires that a defendant "mak[e] decisions on behalf of the enterprise or knowingly carry them out."  *See id.* (quoting *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008)) (emphasis omitted).  And a "pattern" of RICO violations consists of at least two racketeering acts within ten years that are related and "pose a threat of continued criminal activity."  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989); *see also* 18 U.S.C. § 1961(5). Racketeering activity includes, among other offenses, mail and wire fraud.  *See* 18 U.S.C. § 1961(1).

Of all the RICO elements, courts have expressed the widest disagreement in defining the term "enterprise," especially in the context of corporations, their affiliates, and their employees.  *See ClassicStar*, 727 F.3d at 490 (noting that federal courts "have encountered significant conceptual difficulties" when trying to parse complex corporate relationships). The RICO statute defines an "enterprise" as any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The text of the statute suggests that a RICO plaintiff can establish an enterprise by showing that employees of a corporation conducted racketeering activity while performing their jobs.  But that is not how courts interpret the term "enterprise."  RICO plaintiffs must identify two distinct entities:  a "person" liable for RICO violations and an "enterprise" that is "not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  After all, a RICO enterprise is not itself liable for RICO violations.  *See* 18

7

U.S.C. § 1962(c) (imposing liability on "any person"). So there must be other entities or persons—distinct from the enterprise itself—responsible for the racketeering activity.

For this reason, "a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of the enterprise." *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000). So under this rule, a corporation cannot transform into a racketeering enterprise, even if its subdivisions, agents, and employees carry out mail and wire fraud over time. *Id.* And that rule makes sense. If an organization could "join with its own members to undertake regular corporate activity and thereby become an enterprise," every incident of corporate fraud could be a RICO violation. *See id.*; *see also ClassicStar*, 727 F.3d at 490 ("The courts have excluded this far-fetched possibility by holding that an employer and its employees cannot constitute a RICO enterprise.") (quoting *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997)).

So where do these cases leave the meaning of the word "enterprise" as it applies to a corporation acting through its affiliates and employees? Corporate defendants are distinct from a RICO enterprise where they "perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity." *See ClassicStar*, 727 F.3d at 492. So where a corporation employs its subsidiaries or affiliates in a key role to facilitate the fraudulent scheme, the companies are RICO "persons" distinct from the RICO "enterprise." *See id.* at 493 (holding that a corporation was distinct from the RICO enterprise when its subsidiary served as a financially stable guarantor, provided a source of funding, and lent its reputation to facilitate the scheme).

In *Cedric Kushner Promotions, Ltd. v. King*, the Supreme Court reaffirmed the principle that the RICO defendant must have "some distinctness" from the RICO enterprise.

8

533 U.S at 162.  But the Supreme Court expressly declined to weigh in on cases like that at hand, where a plaintiff names a corporation as both the RICO person and the RICO enterprise.  *Id.* at 164 (differentiating cases concerning "a claim that a corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise'").  So in the absence of Supreme Court precedent to the contrary, the plaintiffs must establish a RICO enterprise distinct from RICO defendants to state a claim for relief.

**B.     Shoreline does not plead a RICO claim against the Pilot Defendants.**

Shoreline's RICO claim runs aground on the "enterprise" element.  In its Bill of Particulars, Shoreline names those individuals that it believes participated in the rebate-fraud RICO enterprise, along with the Pilot Defendants and Pilot Oil Corporation.  *See* R. 117-2 at 2.  But each of the named individuals is an employee of the Pilot Defendants.  Shoreline pled as much by incorporating the FBI Affidavit, which notes the particular employee relationship of each of the individuals that Shoreline identifies as participating in the enterprise.  *See* R. 117-1 ¶¶ 7, 9, 14, 79, 120 (Mark Hazelwood, John Freeman, Brian Mosher, Jimmy Haslam, Chris Andrews, Mitch Steenrod, Arnold Ralenkotter, Kevin Clark, Ashley Judd, Jay Stinnett, Holly Radford, Scott Fenwick, Janet Welch, Lexie Holden).  Indeed, Shoreline concedes that the enterprise consisted of no more than the Pilot Defendants and their employees, subsidiaries, and affiliates.  *See* R. 131 at 21 (stating Shoreline "has listed the Defendant companies, John Freeman, and the unknown Pilot employees" as the individuals and corporations that constitute the enterprise); *see also* R. 146 at 61–62 (Transcript of Oral Argument, Jan. 9, 2015).

Shoreline does not plead facts that delineate the roles the Pilot entities played in the conspiracy.  Nor does Shoreline state facts that give rise to a plausible claim that the

defendants "perform[ed] different roles within the enterprise or use[d] their separate legal incorporation to facilitate racketeering activity." *ClassicStar*, 727 F.3d at 473. Throughout its complaint, Shoreline refers to the Pilot entities collectively, arguing that the different entities all participated in the same activities. *See, e.g.*, R. 117 ¶ 15 ("*Defendants* engaged in 'Discount Fraud' by intentionally and deceptively reducing the discounts owed to Shoreline Transportation . . . for the purpose of increasing *Defendants'* profitability." (emphasis added)); *id.* ¶ 16 ("*Defendants'* executives, directors, principles, sales agents, and administrative staff conspired to fraudulently, manually and/or arbitrarily reduce the amount of the discounts owed to Shoreline Transportation in an effort to increase the profits made by *Defendants*." (emphasis added)); *id.* ¶ 17 ("*Defendants* engaged in "Discount Fraud" in numerous different manners, and on numerous different occasions." (emphasis added)). Without more information, the enterprise is comprised solely of Pilot Corporation and its subsidiaries and affiliates. Shoreline has not pled any facts demonstrating that the RICO enterprise is "distinct" from the parent corporation alleged to be the RICO "person." *See ClassicStar*, 727 F.3d at 492. Because a corporation cannot join with itself to form a distinct RICO enterprise, *Begala*, 214 F.3d at 781, Shoreline has not stated sufficient facts to plead a critical element of its RICO claim.

Shoreline also fails to adequately plead a RICO conspiracy claim. Although a substantive RICO charge is not identical to a claim for RICO conspiracy, the offenses overlap. *See United States v. Fowler*, 535 F.3d 408, 420–21 (6th Cir. 2008). To state a claim for a RICO conspiracy, a plaintiff must successfully allege all of the elements of a RICO violation as well as "the existence of an illicit agreement to violate the substantive RICO provision." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th

Cir. 2012).  Because Shoreline cannot establish the "enterprise" element of the underlying substantive RICO violation, its claim for RICO conspiracy also fails to withstand the motion to dismiss.

   **C.    NRT and KFC plead sufficient facts to state a claim against the Pilot Defendants and Propeller under both the federal and New Jersey RICO statutes.**

   NRT and KFC brought RICO claims under both the federal RICO statute and the New Jersey RICO statute.  *See* R. 104 at 36–48 (claims for federal RICO and conspiracy to commit RICO); *id.* at 55–65 (New Jersey civil RICO).  The New Jersey RICO statute is similar to its federal counterpart.  *See* N.J. Stat. Ann. § 2C:41-2b (West 2008) ("It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in or activities of which affect trade or commerce.").  Though the provisions contain similar language, they are not the same for two reasons.

   First, the statutes differ on what a plaintiff must show to demonstrate the defendant "conduct[ed] or participate[d]  . . . in the conduct of [the RICO] enterprise's affairs."  18 U.S.C. § 1962(c).  Under the federal RICO statute, a plaintiff must satisfy this "conduct" element by pleading facts that show that the defendant participated in the "operation and management" of the enterprise.  *See Ouwinga*, 694 F.3d at 792 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)).  But to fulfill the "operation or management" test, NRT and KFC can allege either that the defendant "ma[de] decisions on behalf of the enterprise" or that the defendant knowingly carried out the decisions on behalf of the enterprise.  *Id.* (quoting *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008)).  In contrast, New Jersey does not read a "management" requirement into the state RICO statute's "conduct"

11

element.  *See State v. Ball*, 661 A.2d 251, 267–68 (N.J. 1995) ("[W]e conclude that the New Jersey statute does not contain a requirement that in order 'to conduct or participate in an enterprise,' a defendant must be found to exercise responsibilities of 'operation or management.'").  Rather, all the plaintiff must plead is that the defendant engaged in "activities that seek to further, assist, or help effectuate the goals of the enterprise."  *Id.*

Second, federal and state courts are split over whether the New Jersey RICO statute requires the enterprise to be distinct from the responsible persons.  *Compare Maxim Sewerage Corp. v. Monmouth Ridings*, 640 A.2d 1216, 1221 (N.J. Super. Ct. App. Div. 1993) (concluding that the New Jersey RICO statute does not contain any distinctiveness requirement because the statute subsumes the definition of "enterprise" within the definition of "person"), *with Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 611–16 (D.N.J. 2014) (predicting that the New Jersey Supreme Court would likely interpret the New Jersey RICO statute in conformity with federal law to require a distinctiveness requirement).

Which one of these interpretations must the Court follow?  The highest state court in New Jersey has not decided this issue.  In these circumstances, the Court would ordinarily anticipate how the New Jersey Supreme Court will rule.  *In re Darvocet, Darvon, and Propoxyphrene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014).  The Court need not engage fortune telling here, however, because NRT and KFC meet the more stringent test to establish an enterprise under federal RICO.  NRT and KFC plead sufficient facts to show that the RICO enterprise was distinct from the RICO persons who carried out the racketeering activity.  This structure meets the requirements of an "enterprise" no matter whether the New

12

Jersey Supreme Court concludes that the state RICO statute contains a "distinctiveness" requirement.

> ### 1)      NRT and KFC claim that the Pilot Defendants and Propeller knowingly carried out the activities of the enterprise and so conducted or participated in the conduct of the RICO enterprise.

NRT and KFC allege that the Pilot Defendants and Propeller undertook two broad classes of actions along with the other defendants to further the rebate-reduction scheme. The first set of allegations amounts to no more than "formulaic recitation[s] of the elements" of a RICO cause of action. *Twombly*, 550 U.S. at 555. NRT and KFC claimed that "[e]ach of the defendants participated in, operated and managed directly or indirectly in the conduct of the affairs of . . . the RICO enterprise." R. 104 at 37–38. And they allege that the defendants and Propeller "did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of [the] RICO enterprise through a pattern of racketeering activity." *Id.* at 40. These allegations merely parrot an element of a federal RICO enterprise and thus do not state facts that suggest the plaintiffs are entitled to legal relief.

The next category of allegations implies that the Pilot Defendants and Propeller participated in the scheme by either (1) training individuals to send fraudulent checks or (2) actually sending fraudulent checks on their own. *See id.* at 18–19, 37, 38 (claiming that the defendants participated in the scheme to defraud the plaintiffs by either "directing, training, supervising, conspiring, and otherwise instructing that the fraudulent rebate checks be forwarded to the plaintiffs"; "controlled the enterprise by directing the RICO defendants to send fraudulent rebate checks"; and "participated in the . . . training of various defendants in furtherance of the scheme to defraud KFC and NRT"); *see also id.* at 4, 14, 36 (alleging that the defendants "surreptitiously reduced KFC and NRT's monthly rebates which were paid

via check . . . for the purpose of increasing Pilot's profitability"; "negligently, wantonly, and intentionally misrepresented, on a monthly basis, the rebate[s] due to KFC and NRT"; sent "false and misleading" fuel and rebate checks containing fraudulent statements; and conspired to send false and misleading fuel rebate checks that "each contained fraudulent statements as to the amount due" and was "aware that said statements were false and misleading and intended that the plaintiffs rely" on them).

These remaining allegations are sufficient to show that the Pilot Defendants and Propeller knowingly carried out the decision to send fraudulent checks on behalf of the enterprise.  *See Ouwinga*, 694 F.3d at 792 (citing *Reves*, 507 U.S. at 183) (articulating the test for participating in the "operation or management" of the enterprise).  Taken together, and read in the light most favorable to the plaintiff, the allegations indicate that Propeller and the Pilot Defendants sent fraudulent checks in the mail to NRT and KFC, knew that they were sending fraudulent checks, and did so for the purpose of benefitting the enterprise by increasing its profits.  Those allegations contain sufficient facts to satisfy the "conduct" element of both the federal and state RICO claim. *See Ball*, 661 A.2d at 268 (holding that courts may find a defendant participated in or conducted the activities of the enterprise by knowingly carrying out, assisting, or furthering the operations of the enterprise).

> ### 2)   NRT and KFC plead sufficient facts to suggest that the RICO enterprise was distinct from its members.

In their complaint, NRT and KFC alternatively refer to Pilot Travel, LLC and the association of all the defendants as the RICO enterprise.  *Compare* R. 104 at 40 ("[T]he defendants did associate with a RICO enterprise of individuals and entities who were associated, in fact . . . .") *with id.* at 37–38 ("Each of the defendants participated in, operated

14

and managed directly or indirectly in the conduct of the affairs of Pilot Travel Centers, LLC, the RICO enterprise . . . .").  At oral argument, NRT and KFC clarified that the rebate-reduction RICO enterprise is comprised of an association-in-fact between Pilot Travel, LLC, its employees, Pilot Corporation, and Propeller Corporation.  *See* R. 146 at 51.  Both Propeller Corporation and Pilot Corporation, the plaintiffs claim, are separate and distinct legal entities that do not have common ownership with Pilot Travel Centers, LLC.  *Id. ¶ 6.*

But the plaintiffs incorporated into their complaint the FBI affidavit, which indicates that the employees of Pilot Travel Centers, LLC, are also employees of Pilot Corporation. *See* R. 117-1 ¶¶ 5, 14 (referring to employees of Pilot Corporation and Pilot Travel Centers, LLC, collectively).  And at oral argument, NRT and KFC conceded that they would not be able to allege a federal RICO enterprise absent two findings:  (1) that Propeller Corporation is an entity unaffiliated with the Pilot Defendants, and (2) that Propeller participated in the rebate-reduction scheme.  *See* R. 146 at 54.  The Pilot Defendants argue that Propeller is "merely a holding company" that is a "corporate affiliate of Pilot."  *See* R. 151 at 4.  For this reason, Pilot believes that NRT and KFC cannot show a RICO enterprise distinct from Pilot Travel Centers, LLC, and its affiliates and employees.  *Id.*  Whether Propeller was an entity distinct and unaffiliated from the other Pilot Defendants is a question of fact that need not be resolved at this stage.  The Court takes as true the allegations that Propeller is a distinct legal entity without common ownership with the Pilot Defendants.  *Twombly*, 550 U.S. at 572; *see also Begala*, 214 F.3d at 781 (stating that where the pleadings were not clear, the court would infer that a particular entity was not a subdivision of another company in the enterprise).  Because the plaintiffs allege that Propeller is unaffiliated with Pilot, they plead the requirements for establishing a federal RICO enterprise.  *See Begala*, 214 F.3d at 781.

Since the plaintiffs satisfy the distinctiveness requirement for showing a federal RICO enterprise, they could meet the same requirement—if one exists—in the New Jersey RICO statute. In short, the plaintiffs established that a RICO enterprise exists under federal and New Jersey RICO statutes.

> ### 3) NRT and KFC plead sufficient facts to meet the standard of Federal Rule of Civil Procedure 9(b) and show that the Pilot Defendants and Propeller engaged in racketeering activity.

NRT and KFC claim that the RICO defendants sent monthly fraudulent statements by mail in the form of rebate checks. *See* R. 104 at 15 (claiming that the defendants "did not send the full amount of the rebate, but rather lowered and manipulated the actual rebate amount each month" when they sent checks). The Pilot Defendants and Propeller contend that the plaintiffs failed to plead predicate acts of fraud with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). R. 126-4 at 25. For this reason, the defendants claim that the plaintiffs cannot demonstrate any instance of racketeering activity to support their RICO claim.

To plead a RICO violation, plaintiffs must set forth sufficient facts to establish the defendant engaged in racketeering activity. Plaintiffs claiming predicate acts of racketeering sounding in mail or wire fraud—like NRT and KFC do—must plead the fraud in accordance with Rule 9(b). *Heinrich*, 668 F.3d at 404. Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Courts interpreting the rule require plaintiffs to, at a minimum, "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.*; *see also Craighead v. E.F.*

*Hutton & Co., Inc.*, 899 F.2d 485 (6th Cir. 1990) (dismissing a RICO claim for failing to plead predicate acts with particularity). The Pilot Defendants and Propeller claim that NRT and KFC cannot meet even this test because they did not state the amount that each check was for versus the amount owed. Without that level of detail, the defendants argue, the plaintiffs cannot specify the fraudulent statements and explain why they were fraudulent. R. 126-4 at 25.

Must NRT and KFC allege the exact amount they were owed each month under the agreement and distinguish the exact amount they received? Although the Pilot Defendants and Propeller claim that Rule 9(b)'s "heightened pleading standard" requires as much, courts interpreting the rule disagree. In *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, the Sixth Circuit noted that Rule 9(b)'s particularity requirement "does not mute the general principles set out in Rule 8." *See* 848 F.2d 674, 679 (6th Cir. 1988). Rather, the court found that the "two rules must be read in harmony." *Id.* Rule 8(a), in turn, requires plaintiffs to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a). Given this "backdrop admonition of simplicity in pleading," the Sixth Circuit has historically construed the requirements of Rule 9(b) liberally. *See, e.g.*, *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (acknowledging that the Sixth Circuit reads Rule 9(b) liberally).

Given the Sixth Circuit's liberal construction of Rule 9(b), NRT and KFC need not plead the exact difference between their promised monthly rebate and the amount they received. NRT and KFC already note the time, place and speaker of the fraudulent statements. *See* R. 104 at 17, 37 (noting the dates the fraudulent checks were mailed by the defendants to the plaintiffs' business in New Jersey). Indeed, NRT and KFC provided

additional information in supplemental sealed filings detailing the terms of their rebate agreement.  *See* R. 145.  NRT and KFC also repeatedly claim the defendants sent less than the promised rebate amount while representing that they were transmitting the full value of the rebate as promised.  *See id.* at 5, 6, 9, 10, 15 (claiming that NRT and KFC suffered by not receiving the full amount of the rebate and instead receiving a reduced rebate).  Together, these allegations explain *how* the rebates and checks were fraudulent:  The defendants purported to transmit the full value of the rebate in the documents while they sent less than the promised value.  Those facts, along with the claims that they received less than the promised amount of rebate, allow NRT and KFC to meet the particularity requirements of Rule 9(b) for fraud.  The facts also put the Pilot Defendants on notice of the kinds of allegations against them, which is the purpose of pleading the details of fraud under Rule 9(b).  *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

The Pilot Defendants do not cite cases requiring a plaintiff to calculate the value of missing payments to show why a promise was fraudulent.  This may be because the Sixth Circuit upheld a fraud claim in a RICO case with similar facts where the plaintiff did not plead the amount in arrears.  *See Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir. 1990).  The plaintiff alleged that the defendant fraudulently represented that the plaintiff was receiving annual rebates in amounts that varied yearly.  *Id.* at 884.  The Sixth Circuit held that these allegations of fraud sufficed to survive a motion to dismiss.  *Id.* at 885–86.

NRT and KFC plead sufficient facts to surmount Rule 9(b)'s particularity requirement for predicate acts of mail and wire fraud.  Accordingly, their complaint can survive a motion to dismiss for failing to adequately allege racketeering activity under both the federal and

New Jersey RICO statutes. *See* N.J. Stat. Ann. § 2C:41-1(a)(2) (incorporating the same predicate acts in the federal RICO statute into the New Jersey RICO statute).

> ### 4) NRT and KFC allege that the predicate acts of fraud proximately caused their injury.

The federal RICO statute imposes a "proximate causation" requirement to establish a violation. *See Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Proximate cause, for RICO purposes, requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 268). This does not mean that the defendants' conduct must be the sole cause of the plaintiffs' injuries. *See, e.g.*, *Trollinger Tyson Foods, Inc.*, 370 F.3d 602, 620 (6th Cir. 2004). But "[a] link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Grp., LLC*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 271, 274).

The Pilot Defendants argue that neither KFC nor NRT can show the RICO violation caused their injuries for two reasons: (1) because the FBI Affidavit does not mention NRT or KFC, the plaintiffs cannot demonstrate that they were harmed by the alleged RICO scheme, and (2) the plaintiffs only make conclusory statements insufficient to show that the predicate acts were a cause of their injuries. *See* R. 126-4 at 30 (arguing that NRT and KFC fail to sufficiently plead that they were the target of the scheme); *id.* (contending that the claim for damages is conclusory because KFC did not make a specific allegation of exactly what its injury is). Neither argument is persuasive.

That the FBI Affidavit does not mention NRT or KFC is not dispositive of their claim. The FBI Affidavit does not contain the universe of facts related to the Pilot

Defendants' scheme or the plaintiffs' complaint.  Indeed, the affiant himself notes that the document "does not set forth all [his] knowledge" about the investigation.  *See* R. 117-1 ¶ 2; *see also id.* (noting that the affidavit does not recount all of the investigative activities that have occurred and does not excerpt or summarize every recorded conversation obtained through the investigation).  So just because the Affidavit is silent about a fact does not mean that the plaintiff's complaint fails to set forth "enough factual matter" to suggest the RICO violation caused plaintiff's injuries.  *Twombly*, 550 U.S. at 556.  KFC and NRT claim that they were caught up in the rebate-reduction scheme.  *See* R. 104 at 38–39.  They claim that they were two of the "5,000 companies and/or individuals" that the Pilot Defendants and Propeller targeted as part of the scheme.  *See* R. 104 at 36.  The plaintiffs do not simply rely on the FBI Affidavit to develop the allegation that they suffered an injury—they do so independently in their pleading.  *Cf.* Order on Motion to Dismiss at 3, *Wright Transp., Inc. v. Pilot Corp.*, No. 13-0352-WS-N (S.D. Ala. Jan. 9, 2014).  Accordingly, they have stated a number of facts to suggest that the rebate-reduction scheme caused their financial injuries.

But are these facts enough?  Not according to the Pilot Defendants' and Propeller's second argument:  that the plaintiffs did not sufficiently allege causation between the RICO violation and the damages.  The Pilot Defendants claim that NRT and KFC should have, at the least, alleged "from what competitors" they would have purchased fuel at a lower price, what that lower price would have been, and what their additional costs were.  *See* R. 126-4 at 31.  The Pilot Defendants claim that without this information, the plaintiffs' claim that the RICO violations caused their damages is "conclusory."  *Id.* at 30.  But if a defendant promises to sell goods at a fixed price and then charges a higher price, how is the price a third party would have charged relevant to causation?  The plaintiffs need not plead the

20

alternate price of fuel because that fact relates to the measurement of their damages—not the cause of their injury.

Here, NRT and KFC state sufficient facts to plausibly suggest that the rebate-reduction scheme was a proximate cause of their injuries.  The plaintiffs allege that the purpose of the scheme was to reduce the rebates owed to customers, including NRT and KFC.  *See* R. 104 at 38 (claiming that NRT and KFC were caught up in the fuel rebate reduction scheme).  The plaintiffs then state facts to suggest that the defendants sent spreadsheets and messages through interstate wire transmission that resulted in a coordinated effort to reduce the plaintiffs' rebates—consistent with the aim of the scheme.  *Id.* at 42–43. Finally, the plaintiffs also claim that the RICO defendants wrote fraudulent checks to NRT and KFC in an amount less than they promised to transmit.  *Id.* at 14–15.  They allege that the RICO defendants sent the fraudulent checks every month by mail.  *Id.*  Taken together, these allegations plausibly suggest that the predicate acts of fraud caused NRT and KFC's injuries.  After all, if the RICO defendants had not sent checks containing a fraudulent payment amount but instead paid the full rebate, the plaintiffs would have received their full rebates.  In that circumstance, NRT and KFC would not have experienced a shortfall in the amounts they expected under their agreement.  So NRT and KFC have alleged the predicate acts were a proximate cause of their injury, such that they have demonstrated a "right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Accordingly, their complaint survives a motion to dismiss for failing to adequately allege proximate causation under both the federal and New Jersey RICO statutes.  *See Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (N.J. Super. Ct. 1995) (explaining  that courts follow federal law on New Jersey

RICO statute's proximate-cause requirement because no state decisional law exists on that issue).

> ### 5) By alleging that they failed to receive the benefit of their bargain, NRT and KFC set forth sufficient facts to plead "injury to business or property."

The Pilot Defendants and Propeller argue that NRT and KFC cannot recover damages for a RICO violation other than any out-of-pocket costs they may have incurred. *See* R. 126-4; R. 151 at 1. They claim that the plaintiffs generally do not have standing to recover expectation damages under RICO, even if the RICO enterprise's racketeering activity caused those damages. *Id.* In support of this rule, the Pilot Defendants cite to *Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989). But *Fleischhauer* determined that "in some cases expectancy damages might be appropriate" to compensate plaintiffs for injuries stemming from RICO violations. *Id.* So the case clearly does not foreclose NRT and KFC from recovering expectation damages as a matter of law.

In addition to *Fleischhauer*, the Pilot Defendants rely on lower court decisions to bolster their claim that a plaintiff cannot recover expectation damages resulting from a RICO violation. *See* R. 126-4 at 32 (citing *Line v. Astro Mfg. Co., Inc.*, 993 F. Supp. 1033 (E.D. Ky. 1998) and *Heinold v. Perlstein*, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987)). In *Line,* the plaintiff claimed that the defendant violated RICO by making fraudulent misrepresentations about the fire safety of a manufactured home. 993 F. Supp. at 1037. These misrepresentations, the plaintiff claimed, were RICO violations that induced him to purchase the home. *Id.* The *Line* court, relying on *Heinold*, determined that a plaintiff could not recover expectation damages from a RICO violation that caused him to enter a contract. *Id.* But, according to NRT and KFC, that is not what happened here. The enterprise's fraudulent

statements did not induce the plaintiffs to enter into the fuel rebate contract.  Rather, they claim the Pilot Defendants engaged in mail and wire fraud after working out the details of the rebate agreements.  *See* R. 104 at 14.  Courts—including the *Heinold* court to which the Pilot Defendants cite—generally find that a plaintiff cannot experience injury after being induced into a contract through racketeering activity.  But these courts distinguish cases where, as here, the plaintiff first had a valid contract but could not obtain the benefit of the bargain because of racketeering behavior.  *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 (2d Cir. 2013) (holding that a plaintiff could state a claim for expectation damages where the plaintiffs "already had a protectable interest" in a contract before the RICO predicate acts occurred); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987); *Heinold*, 651 F. Supp. at 1412 (distinguishing cases where a RICO violation interfered with a contract extant at the time of the racketeering conduct).  These courts reason that the RICO statute permits recovery for injuries to property, including a property interest in the benefits from a contract. Where the property interest and harm materialize only after the RICO violation occurs, the argument goes, there is no way that the RICO violation can cause any injury to the expectancy.  *See, e.g.*, *Heinold*, 651 F. Supp. at 1412 (holding that "it would defy logic to conclude that the requisite causation exists" where the RICO violation creates the plaintiff's property interest).

Accordingly, the Pilot Defendants cannot prevail on their motion to dismiss the claim for the plaintiffs' failure to plead damages.  On the contrary, Sixth Circuit law and persuasive decisions from other jurisdictions indicate that the plaintiffs *can* recover damages caused by the Pilot Defendants' scheme.  Similarly, the plaintiffs' allegations will allow them to survive a motion to dismiss their New Jersey RICO claims for failure to adequately plead

23

damages.  *See Shulton, Inc. v. Optel Corp.*, 698 F. Supp. 61, 64 (D.N.J. 1988) (relying on state-law damage principles to hold that a New Jersey RICO plaintiff was entitled to "benefit of the bargain" damages).

> 6)     **NRT and KFC also plead sufficient facts to state a claim for RICO conspiracy as against the Pilot Defendants and Propeller.**

The Pilot Defendants and Propeller contend that NRT and KFC's claim for RICO conspiracy rises and falls with the substantive RICO claim.  *See* R. 126-4 at 35 (arguing that the plaintiffs' failure to adequately prove the "enterprise" element of the RICO claim precludes their claim for RICO conspiracy).  But because NRT and KFC state sufficient facts to establish a RICO violation, in this case, their claim for conspiracy rises.  *See Ouwinga*, 694 F.3d at 796 (holding that because the plaintiffs pled a claim under § 1962(c), the district court erred in dismissing the RICO conspiracy claim).

The Pilot Defendants and Propeller claim that NRT and KFC's complaint shows no facts that would suggest an agreement between the defendants to commit RICO violations. R. 126-4 at 33.  They also argue that any allegations in the complaint that may suggest a conspiracy are conclusory.  *Id.*  The defendants overstate the pleading requirements for a conspiracy.  A RICO plaintiff need not allege that the defendants signed a paper contract to establish the existence of an agreement—rather, an agreement may be established from the defendants' acts.  *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012).  NRT and KFC allege that each of the defendants facilitated meetings and breakout sessions to conduct racketeering activity.  *See* R. 104 at 47.  This allegation, taken as true, indicates conduct that at least "plausibly suggests" an agreement to commit mail and

wire fraud.  Accordingly, NRT and KFC's claim for conspiracy to commit RICO violations survives the Pilot entities' motions to dismiss.

## II.        Contract-Based Claims

The seven plaintiffs each claim that the Pilot Defendants entered into—and subsequently breached—contracts with them to provide rebates for purchasing fuel at Pilot Travel Centers.  *See* R. 117 at 10–11 (Shoreline); R. 25 at 6 (Osborn); R. 104 at 21 (NRT and KFC); R. 112 at 18 (FST); R. 113 at 17–18 (HB).  Additionally, NRT and KFC bring a claim for the breach of the duty of good faith and fair dealing.  R. 104 at 50.  For the reasons articulated below, all the plaintiffs' contract-based claims survive the Pilot Defendants' motion to dismiss.

The Pilot Defendants argue that these claims fail for a common reason:  the complaints do not set forth in any detail the terms of the contract that the defendants allegedly breached.  *See* R. 126-4 at 57.  The Pilot Defendants argue that the plaintiffs' complaints are so threadbare that they fail to state a claim under applicable state law.  *Id.* at 58–60.

According to the Pilot Defendants, the plaintiffs must set forth the amounts owed and paid under the agreement on each occasion of breach.  *See id.* at 58–60.  In support of their rule, however, the defendants cite to cases where courts dismissed contract claims because the plaintiffs did not plead that the defendants breached any contractual term.  *See id.* at 57–58 (citing *Ala. Aircraft Indus., Inc. v. Boeing Co., Inc.*, No. 2:11-cv-3577, 2013 WL 1178720, at *12 (N.D. Ala. Mar. 20, 2013) and *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005)).  These cases are not on point.  Why?  Because completely

failing to set forth any contractual provisions that the defendants breached is not the same as failing to describe a term in sufficient detail.

Alabama, Ohio, and New Jersey law require the plaintiffs to plead the contractual terms that the defendant breached. *See, e.g.*, *Fidelity & Cas. Co. of N.Y. v. Raborn*, 173 So. 402 (Ala. 1937) (noting that it is "not necessary to use the precise terms" of the contract when stating a claim for breach and that a plaintiff need only show that an obligation has been broken); *Am. Sales v. Boffo*, 593 N.E.2d 316, 321 (Ohio App. 1991); *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06-5814(JBS), 2007 WL 1756027, at *5 (D.N.J. June 18, 2007) (interpreting New Jersey law). The defendants have not cited to any authority requiring that the plaintiffs show facts that demonstrate anything more than the defendants breached a contractual provision. And Federal Rule of Civil Procedure 8(a)(2) requires that the pleading need only set out a "short and plain" statement of the claim. As discussed below, the plaintiffs introduce sufficient facts to set forth "short and plain statements" alleging that the defendants breached the provision of the rebate agreements promising fuel discounts.

### A.    Shoreline, Osborn and HB prevail on their claims for breach of contract under Alabama law.

Under Alabama law, a plaintiff must show that a defendant breached a contractual obligation, but need not outline the precise terms of the provision. *See Raborn*, 173 So. at 406. In their pleadings, Shoreline, Osborn, and HB do just that. Shoreline alleges the following three facts in its complaint. First, Shoreline had an agreement with the Pilot Defendants to purchase diesel based on a price calculated as the greater of either: (1) the cost of diesel to the defendants plus two cents or (2) the retail price of diesel minus three

26

cents.  *See* R. 117 ¶¶ 9–12.  Second, the defendants promised to apply discounts under this agreement to invoices they sent to Shoreline.  *Id.* ¶ 14.  Third, the defendants reduced the discounts owed to Shoreline when they transmitted payments.  *Id.* ¶ 15.  These facts, taken together, plausibly suggest that the defendants had a contract to pay money to Shoreline but paid less than they pledged.  Based on those allegations, Shoreline stated sufficient facts to plead a claim for breach of a contractual term, even though Shoreline did not describe the "precise terms" of the obligation.  *Raborn*, 173 So. at 406.  The defendants do not point to state law requiring Shoreline to do anything more in its complaint.  And the Federal Rules of Civil Procedure do not impose a higher pleading obligation.  *See Twombly*, 550 U.S. at 557 (requiring that the plain statements of the complaint need only "possess enough heft" to show that the pleader is entitled to relief).

For similar reasons, Osborn's claim for breach of contract under Alabama law survives the motion to dismiss.  In its complaint and bill of particulars, Osborn alleges that the Pilot Defendants promised to pay a rebate.  *See* R. 25 ¶ 11; R. 108 at 3–4.  Osborn, however, does not estimate the size of the rebate under the agreement.  R. 25 ¶ 12.  Rather, Osborn claims that the Pilot defendants breached the agreement by reducing the rebate amounts that it owed.  *Id.*  Together, these statements show both that Osborn had a contract and how the defendants breached it.  It is of no moment that Osborn did not quantify the breach.  After all, under Alabama law, it is "not necessary to use the precise terms" of the contract obligation when stating a claim for breach.  *Raborn*, 173 So. at 406; *see also* Order on Motion to Dismiss at 4–5, *Wright Transp., Inc. v. Pilot Corp.*, No. 13-0352-WS-N (S.D. Ala. Jan. 9, 2014) (finding that the plaintiffs set forth a claim for breach under Alabama law by stating that the defendants "withheld" a portion of the rebate due).

27

Finally, HB's claim for breach of contract also clears the Pilot Defendants' motion to dismiss. HB pled that a term of its contract with the Pilot Defendants included a "diesel discount agreement" where the Pilot Defendants offered discounted pricing on fuel to the companies that HB acquired. *See* R. 113 ¶¶ 6, 8. HB also asserted that the Pilot Defendants either "never provided" the discount deal or the rebates as promised. *Id.* ¶¶ 9, 12. HB incorporated these allegations, among others, in its claim for breach of contract. *See id.* ¶ 72. HB further specified that the Pilot Defendants provided "some, but not all, of the promised discounts." *Id.* ¶ 75. So even though HB did not reduce the value of the breach to a numeric amount, the facts that it claims plausibly suggest that the Pilot Defendants did not fulfill the terms of their contract. *Twombly*, 550 U.S. at 555.

### B. NRT and KFC's claims for breach of contract and breach of good faith and fair dealing under New Jersey law survive the Pilot Defendants' motion to dismiss.

New Jersey law does not require plaintiffs that bring a breach of contract claim to reduce the breach to an exact quantity of harm. *See, e.g.*, *Oswell*, 2007 WL 1756027, at *5 (interpreting New Jersey law). Instead, plaintiffs must plead the existence of a valid contract, breach of its provisions, performance by the plaintiff, and resulting damages. *Id.* NRT and KFC both meet those requirements. In their complaint, NRT and KFC claim that Pilot Travel Centers, LLC, agreed to provide monthly rebates based upon a discount formula. R. 104 at 21. Although NRT and KFC claim that Pilot Travel Centers, LLC, mailed monthly rebate checks, the plaintiffs maintain that the rebates were reduced each month from the promised amount. *Id.* Therefore, NRT and KFC maintain, neither entity "received the full . . . discount." *Id.*

That NRT and KFC also conclude that Pilot Travel LLC "breached its contract with NRT and KFC" does not affect the strength of their complaint. *Id.* at 22. The plaintiffs already point to sufficient facts to show that Pilot Travel Centers, LLC promised monthly rebates but paid less than the promised amount. That information is sufficient to identify a contractual term and the nature of its breach. All NRT and KFC had to do is plead allegations that possess "enough heft" to show that they are entitled to some relief—not a particular amount of relief. *Twombly*, 550 U.S. at 557. NRT and KFC's allegations meet that minimum requirement. So contrary to the Pilot Defendants' claim, NRT and KFC's allegations are sufficient to state a breach of contract claim, even under the lenient standards of Federal Rule of Civil Procedure 8(a).

For similar reasons, NRT and KFC's claim that Pilot Travel Centers, LLC breached the duty of good faith and fair dealing survives the motion to dismiss. Under New Jersey law, a covenant of good faith and fair dealing is implied in every contract. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). The Pilot Defendants claim that NRT and KFC failed to state sufficient facts to establish that they have a contract with Pilot Travel Centers LLC. Accordingly, they argue that the plaintiffs' claim for breach of the duty of good faith and fair dealing necessarily fails. *See* R. 126-4 at 60.

The Pilot Defendants' argument is unpersuasive. NRT and KFC set forth facts to plausibly suggest that they had an agreement with Pilot Travel Centers, LLC. NRT and KFC claim that Pilot Travel Centers, LLC solicited them to purchase fuel and participate in a rebate program. As part of the program, NRT and KFC purchased fuel from Pilot Travel Centers, LLC on a "daily basis" in exchange for monthly discounts on the price of fuel. R. 104 at 13–14. The discounts were to be transmitted by check. *Id.* These facts, taken

29

together, are sufficient to plausibly suggest the "basic features of a contract: offer, acceptance, consideration, and performance." *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013). Accordingly, the Pilot Defendants cannot prevail on a motion to dismiss for breach of the duty of good faith and fair dealing on the grounds that there was no contract to begin with.

### C. FST's claim for breach of contract under Ohio law survives the Pilot Defendants' motion to dismiss.

The Pilot Defendants argue that FST fails to state a claim for breach of contract under Ohio law. Their main concern is that FST's complaint is full of "vague allegations" that are "insufficient to place Pilot on notice" as to the terms of the contract. The Pilot Defendants cannot prevail on their claim for two reasons: (1) FST does allege sufficient facts to state a claim for a breach of contract and (2) the purpose of the pleading rules in the Federal Rules of Civil Procedure is not to supply defendants with every fact that supports a plaintiff's claim for relief.

FST claims that Pilot Travel Centers, LLC solicited FST to purchase fuel by offering discounted pricing. R. 112 ¶ 6. FST notes the specifics of the discount agreement in some detail. In a number of cities, Pilot Travel Centers, LLC promised to pay a discount measured by the difference between the price of FST's fuel minus several cents per gallon. *Id.* ¶ 14. In other cities, Pilot Travel Centers, LLC would repay FST the difference between the retail price of fuel and Pilot Travel Center, LLC's cost of fuel plus a few cents. *Id.* ¶ 15. FST purchased fuel from Pilot Travel Centers, LLC, and received invoices for the sales. *Id.* ¶¶ 11, 12. But FST claims that it received less than the promised amount of the rebate and that it was paying more than the agreed-upon amount for fuel. *Id.* ¶ 17. These facts suggest

30

that Pilot Travel Centers created and subsequently breached a contract with FST.  First, Pilot Travel Centers, LLC offered to form a contract to purchase fuel, to which FST agreed.  Second, the allegations indicate that FST would receive periodic rebates under the contract.  Third, by pleading that FST purchased fuel at Pilot Flying J retailers, FST stated facts that give rise to a plausible claim that the contract was supported by legal consideration.  Finally, the allegations give rise to a plausible claim that Pilot Travel Centers LLC withheld the rebate and accordingly breached the agreement.  *See Lake Land Emp. Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 31 (Ohio 2004) (identifying the elements of a contract as: "an offer, an acceptance, contractual capacity, consideration . . ., a manifestation of mutual assent, and legality of object and of consideration").  For these reasons, the facts in the complaint are sufficient to state a claim for relief.

Contrary to what the Pilot Defendants argue, the Federal Rules of Civil Procedure do not require FST to give additional "notice" about details of its claims in the complaint.  R. 126-4 at 60.  Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted the rule to require plaintiffs to state facts in the complaint that "plausibly suggest[]" they are entitled to relief.  *See Twombly*, 550 U.S. at 557.  But the Supreme Court did not interpret Rule 8(a) to require the plaintiff to put defendants on notice of the amount sought to recover on a claim.  Neither did the Supreme Court interpret the rule to require the plaintiff to describe the details of how the claim arose.  *Id.* at 547 (holding that the plaintiff need not provide heightened fact pleading of the specifics of a claim).  Accordingly, by pleading a claim sounding in contract with sufficient facts, FST fulfilled its requirements

31

under the federal rules to provide notice to the Pilot Defendants of the type of claim it sought to bring in this litigation.

## III.      Claims Sounding in Fraud

The seven plaintiffs bring claims sounding in fraud against the Pilot entities under Alabama, Ohio, and New Jersey law.   The Alabama plaintiffs—Shoreline, Osborn, and HB—state claims for the following causes of action with varying levels of success: fraudulent inducement, fraudulent misrepresentation, suppression, deceit, promissory fraud, and negligent misrepresentation.   FST, the Ohio plaintiff, states a claim for fraudulent inducement but not fraudulent misrepresentation.   And for the reasons described below, NRT and KFC plead claims for relief under New Jersey law for fraudulent inducement, fraud, equitable fraud, aiding and abetting fraud, and conspiracy to commit fraud against Pilot Travel Centers, LLC.   But as to Pilot Corporation and Propeller, only their claim for conspiracy to commit fraud survives the motions to dismiss.

The Pilot Defendants object to the plaintiffs  (1) relying on the FBI Affidavit to state claims for relief, R. 126-4 at 37–41, (2) bringing fraud claims for breaches of contract, *id.* at 37, and (3) failing to plead fraud claims with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure, *id.* at 41.

The Pilot Defendants' first point of contention has no merit.   That the plaintiffs rely on the FBI Affidavit to support their claims for fraud does not pose an obstacle to proceeding with this suit.   Why?   Because the plaintiffs do not solely rely on the facts in the FBI Affidavit to establish all the elements of their fraud claims.   The plaintiffs claim they were victims of the same fraudulent scheme described in the FBI Affidavit.   The plaintiffs do not simply point to the FBI Affidavit to describe the full extent of their dealings with the Pilot

Defendants.  *See* R. 117 ¶ 18 (Shoreline's complaint incorporating the FBI Affidavit for the purpose of describing the fraudulent scheme); R. 25 ¶ 16 (Osborn's complaint incorporating the FBI Affidavit for the same purpose); R. 104 at 20 (NRT and KFC's complaint incorporating the FBI Affidavit for the same purpose); R. 112 ¶¶ 23–55 (FST's complaint incorporating the FBI Affidavit for the same purpose); R. 113 ¶¶ 17–49 (HB's complaint incorporating the FBI Affidavit for the same purpose).  The plaintiffs set forth separate allegations in their complaints—untethered to the FBI Affidavit—to plead that the Pilot Defendants made misrepresentations about their rebate contracts.  For that reason, it is of no moment that the FBI Affidavit is silent about the specific misrepresentations to the plaintiffs. And that is why this case can be distinguished from the complaint dismissed in *Wright Transportation, Inc. v. Pilot Corp.*, where the plaintiff relied only on the facts in the FBI Affidavit to support its claims.  *See* Order on Motion to Dismiss at 3, *Wright Transp., Inc. v. Pilot Corp.*, No. 13-0352-WS-N (S.D. Ala. Jan. 9, 2014).

The Pilot Defendants' remaining concerns about the plaintiffs' fraud-based claims may be resolved through a two-part inquiry.  First, the Court must determine whether state law allows plaintiffs to bring claims for fraud for actions that are related to a breach of contract.  And if so, the Court must determine whether the plaintiffs adequately pled facts to show fraud under Rule 9(b).  The plaintiffs must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  How may the plaintiffs satisfy this requirement?  Generally, courts require the plaintiff to describe, at a minimum, the following:  (1) the time, place, and content of the allegedly fraudulent misrepresentations, (2) the fraudulent scheme, (3) the fraudulent intent of the defendants, and (4) injury resulting

from the fraud.  *See Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)).

> A.  **Alabama Law permits plaintiffs to state a claim for fraudulent inducement and fraudulent misrepresentation of an independent promise based on conduct that relates to a breach of contract.**

Alabama law does not permit plaintiffs to state claims for fraud for a mere breach of a contractual provision.  *Ex parte Grand Manor, Inc.*, 778 So.2d 173, 182 (Ala. 2000) (holding that a plaintiff must show fraudulent intent to breach a contract to maintain a claim for fraud as otherwise, "any breach of contract would constitute a fraud").  This is true even if the defendant is alleged to have breached the contract in bad faith.  *See, e.g.*, *Am. Cast Iron Pipe Co. v. Williams*, 591 So.2d 854, 857 (Ala. 1991) (finding that a bad-faith breach of contract does not rise to a tort action for bad faith).  Rather, a plaintiff may bring a claim for fraud for actions related to a breach of contract in two circumstances:  (1) fraudulent misrepresentation of an independent promise and (2) fraudulent inducement.

First, a plaintiff may bring a fraud claim for misrepresenting promises that are independent of the obligations in the contract and that satisfy the elements of fraud.  *Deupree v. Butner*, 522 So.2d 242, 244 (Ala. 1988).  So to state a claim for fraud—also known as fraudulent misrepresentation—Shoreline, Osborn, and HB must prove (1) a false representation, (2) concerning a material fact, (3) plaintiff's reliance on the false representation, and (4) actual injury resulting from that reliance.  *See U.S. Diagnostic, Inc. v. Shelby Radiology, P.C.*, 793 So.2d 714, 720–21 (Ala. 2000), *overruled on other grounds by Bruce v. Cole*, 854 So.2d 47, 58 (Ala. 2003).

The Alabama plaintiffs dispute that the misrepresentation must be about something unrelated to the breach of the contract.  Shoreline and HB claim that Alabama law permits an

action for both fraud and breach of contract on the same set of operative facts, including where a defendant takes steps to conceal a breach. *See* R. 150 at 2 (Shoreline's argument interpreting Alabama law as permitting an action "for both fraud and breach of contract on the same set of operative facts"); R. 130 at 16 (HB's claim interpreting Alabama law to permit a claim for fraud and breach of contract on the basis of fraudulent concealments after the contract was made); R. 149 at 3 (HB's argument that Alabama law does not preclude the possibility that a plaintiff can bring a claim for fraud when a defendant takes independent steps to conceal a breach of contract). In support of this rule, the plaintiffs rely on *Deupree v. Butner*, 522 So.2d 242, 244 (Ala. 1988). *See* R. 150 at 1 (Shoreline); R. 149 at 2 (HB). But *Deupree* is inapposite, as the Alabama Supreme Court identified two narrow categories of cases where a plaintiff could sue both for breach of contract and for fraud: (1) where the defendant misrepresents the quality of goods sold through a contract and (2) where an insurance company engaged in bad faith by first assuring the plaintiff it will extend coverage despite the plaintiff's medical history and then refusing to pay the plaintiff's claims. *Deupree*, 522 So.2d at 244. Neither scenario is present here. Accordingly, the plaintiffs must set forth facts that indicate that the Pilot Defendants breached a promise that was not contained in the agreement in order to prevail on a claim for fraud.

Second, Shoreline, Osborn, and HB may state a claim for fraudulent inducement. This cause of action requires the plaintiffs to plead and prove that (1) the Pilot Defendants made representations (2) with the intent to deceive and (3) with no intent at the time the representations were made to carry them out. *See Evans v. Adam's Rib, Inc.*, 267 So.2d 448, 450 (Ala. 1972).

### 1) Shoreline pleads sufficient facts to state a claim for fraudulent inducement but not for fraudulent misrepresentation or suppression.

Shoreline claims that it stated sufficient facts in its complaint to support both a claim for fraudulent inducement and for fraud. *See* R. 150 at 3. And although Shoreline does not label the cause of action in its complaint as one for fraudulent inducement, it may still state that claim. Why? Because the Federal Rules of Civil Procedure do not "countenance dismissal of a complaint" for imperfectly stating the legal basis of relief. *Johnson*, 135 S. Ct. at 346.

In its complaint and bill of particulars, Shoreline sets forth at least five facts in support of its claim for fraud. First, Shoreline alleges that John Freeman, a former Vice President of Sales and former Director of Sales of the Pilot Defendants, met with the president of Shoreline Transportation. R. 117 ¶ 21. At the meeting in August 2008, Mr. Freeman promised Shoreline would receive a rebate deal of the better of a discounted retail price of fuel or the Pilot Defendants' cost of fuel plus a few cents. *Id.* Second, Shoreline maintains that after the meeting, the Pilot Defendants fraudulently and deceptively gave Shoreline less than the promised rebate by one cent per gallon. *Id.* ¶ 22. Third, Shoreline maintains that the Pilot Defendants concealed the fact that they gave a different rebate than what they promised Shoreline. *Id.* ¶ 26. Fourth, Shoreline claims in its bill of particulars that the Pilot Defendants never intended to give Shoreline the rebate it initially promised. *See* R. 117-2 at 8. Fifth, Shoreline also alleges that the Pilot Defendants made the fraudulent statements with the intent to deceive the plaintiffs. *Id.* So throughout both its complaint and its bill of particulars, Shoreline claims that the Pilot Defendants concealed and misrepresented the fact that they were not providing the promised discount. *See* R. 117 at 3

36

(claiming that the Pilot Defendants "intentionally and deceptively" reduced the discounts owed to Shoreline); *id.* at 4 (misrepresenting the value of freight and tax charges to Shoreline rather than using the actual value of those charges, as required by the parties' agreement).

These facts allow Shoreline to bring a claim for fraudulent inducement. Shoreline pleads the time, place, speaker, and nature of the misrepresentations that Mr. Freeman made to induce Shoreline to enter into the fuel-rebate contract. R. 117 ¶ 21 (noting that Mr. Freeman made the offer at a meeting in 2008). Shoreline also claims that the Pilot Defendants never intended to keep their promise; rather, they misrepresented the nature of the rebate agreement to induce Shoreline to agree to the deal. R. 117-2 at 8. But what of Shoreline's allegations about the Pilot Defendants' mental state and intent to commit fraud? Those statements do not bar relief, as Rule 9(b) permits plaintiffs to state conditions of another person's mind "generally." *See* Fed. R. Civ. P. 9(b). And when pleading state-of-mind generally, Shoreline need only state facts that make the allegation "plausible on its face." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677). Shoreline did so by alleging that the Pilot employees manually reduced rebates and held meetings to discuss how to reduce rebates. R. 117 ¶¶ 16, 24. These facts make it plausible that Shoreline committed fraudulent acts intentionally, and accordingly establish the final element for fraudulent inducement.

Shoreline, however, does not assert sufficient facts to establish a claim for fraud. Shoreline does not identify a misrepresentation apart from the Pilot Defendant's failure to pay the bargained-for rebate. *See* R. 117 at 3–4. Absent a misrepresentation of facts independent from the obligations in the rebate agreement, Shoreline has no basis to bring a fraud claim.

Neither can Shoreline prevail on its claim for suppression.  To prevail on this claim under Alabama law, a plaintiff must show:  "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury."  *CNH Am., LLC v. Ligon Capital, LLC*, No. 1111204, 2013 WL 5966782, at *3 (Ala. Nov. 8, 2013).  The duty on the part of the defendants to disclose facts may arise from the confidential relations of the parties or after one of the parties to a contract asks a question to the other.  *See Freightliner, LLC v. Whatley Contract Carriers, LLC*, 932 So.2d 883, 892 (Ala. 2005) (holding that parties to a contract do not have a duty to disclose that supports a claim for suppression but are obligated to respond truthfully to the other's questions).

Nowhere in its complaint or bill of particulars does Shoreline plead that it had a confidential relationship with the Pilot Defendants.  Nor does Shoreline claim that the Pilot Defendants failed to answer any of Shoreline's questions in a truthful manner.  As a result, Shoreline cannot establish the first element of a claim for suppression, which requires dismissal of this claim.

> 2)      **Osborn does not plead its claims for fraudulent misrepresentation, promissory fraud, or deceit with sufficient particularity to withstand the motion to dismiss.**

Osborn does not claim in its complaint or bill of particulars that the Pilot Defendants fraudulently induced it to enter into a contract.  *See* R. 25; R. 108.  And Osborn did not file any supplement to its pleadings after the hearing on the motion to dismiss explaining how its complaint contains sufficient facts to state a claim for fraudulent inducement.  Accordingly, Osborn does not have a cause of action for fraudulent inducement.

Osborn attempts to bring a claim for fraud misrepresentation based on the Pilot Defendants' alleged misrepresentations about the amount of the rebate it was transmitting to Osborn. *See* R. 25 ¶ 14 (claiming that the Pilot Defendants concealed the fact that they charged Osborn a higher price than they agreed to in their contract); R. 108 at 8 (claiming that the Pilot Defendants represented that they were paying rebates in the way described in the contract but that they did not ultimately meet the contractual payment obligation). But Osborn does not allege that the Pilot Defendants misrepresented anything apart from their breach of the fuel rebate contract. And that is not enough to bring a claim for fraudulent misrepresentation under Alabama law. *See Ex parte Grand Manor*, 778 So.2d at 182 (holding that Alabama law does not permit plaintiffs to state claims for fraud by pointing to a breach of a contractual provision).

Osborn cannot prevail on a fraudulent misrepresentation claim for another reason. Osborn does not meet the particularity requirements of Rule 9(b) to state a claim for fraud. Nowhere does Osborn even give a ballpark estimate of the times that the Pilot Defendants made misrepresentations. *See* R. 108 at 8 (claiming only that "Pilot represented . . . that it would pay rebates in the way described in the contract"); *id.* at 10 (alleging that Pilot "knowingly or recklessly misrepresented . . . that it would pay rebates in the way described in the contract"). Nor is it clear from the complaint and the bill of particulars whether the misrepresentations occurred in person or through the monthly rebates. And finally, Osborn does not explain the content of the misrepresentations— not even by claiming that the Pilot Defendants promised to refund Osborn a few cents based on the amount of diesel purchased. *See* R. 25 ¶ 39 ("As set out in detail in the preceding paragraphs, [the Pilot Defendants] made misrepresentations to Osborn."). Absent these minimum requirements for stating a claim for

fraud under Rule 9(b), Osborn cannot succeed on a claim for misrepresentation.  *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

Osborn's failure to meet the requirements of Rule 9(b) are fatal to its remaining fraud-based claims as well.  Osborn brings a claim for promissory fraud under Alabama law.  *See* R. 25 ¶¶ 32–37.  In order to prevail on its claim for promissory fraud, Osborn must plead two facts in addition to satisfying the elements for fraud under Alabama law:  (1) that the defendant had the intention not to perform the act promised proof that at the time of the misrepresentation, and (2) that the defendant had an intent to deceive.  *Southland Bank v. A & A Drywall Supply Co.*, 21 So.3d 1196, 1210 (Ala. 2008).  But as explained above, Osborn cannot succeed on its underlying fraud claim because it did not plead the elements with sufficient particularity.  This failure is fatal to its claim for promissory fraud, even if Osborn would be able to establish the additional elements of this cause of action.

Finally, Osborn's claim of deceit cannot survive the Pilot Defendants' motion to dismiss.  The elements of deceit—much like the elements for fraudulent misrepresentation—include (1) willful misrepresentation of (2) a material fact (3) made to induce another to act, and (4) upon which he does act (5) to his injury.  *Whitlow v. Bruno's, Inc.*, 567 So. 2d 1235, 1240 (Ala. 1990).  To state a claim for deceit, Osborn must plead the elements of this cause of action with particularity under Rule 9(b).  *See Kohler v. Jacobs*, 138 F.2d 440, 443 (5th Cir. 1943).   Osborn does not plead with particularity the time, place, or content of any misrepresentations that the Pilot Defendants allegedly made.  Because it did not meet this basic pleading requirement, Osborn cannot survive the Pilot Defendants' motion to dismiss its claim for deceit.

40

3) **HB's claim for fraudulent misrepresentation and suppression do not survive the motion to dismiss, but its fraudulent inducement and negligent misrepresentation claims do.**

HB contends that it pled sufficient facts in its complaint to withstand the motion to dismiss its fraudulent misrepresentation claims. HB points to its claims that Pilot Travel Centers, LLC concealed information and made affirmative misrepresentations to hide the fact that it was "cheating [HB] out of the price deals." R. 149 at 4. Those allegations, HB maintains, go "far beyond alleging that Pilot is liable for fraud merely because it intentionally or maliciously breached a contract." *Id.*

HB's argument is unpersuasive. HB alleges that Pilot Travel Centers, LLC represented that it was paying the promised rebate when, in fact, it was not. The failure to pay the promised rebate amounts to a breach of contract. But to state a claim for fraud under Alabama law, a misrepresentation must be about facts that do not double as a breach of contract. *Deupree v. Butner*, 522 So.2d 242, 244 (Ala. 1988). Here, Pilot Travel Centers, LLC's misrepresentation related to its breach of contract. For this reason, the complaint does not properly state a claim for fraud under Alabama law.

HB fares no better on its claim for suppression. In order to prevail on this claim, HB must identify the source of Pilot Travel Centers, LLC's legal duty to disclose information. That duty may not simply arise from the parties' contractual relationship. *Freightliner, LLC*, 932 So.2d at 892. Indeed, in commercial transactions at arms' length, no obligation to disclose information arises when information is not requested. *Id.* HB does not claim that it requested any information that Pilot Travel Centers, LLC failed to disclose. HB points to an Alabama Supreme Court case to argue that Pilot Travel Centers, LLC had a special duty through its rebate contract to disclose facts to HB. *See* R. 130 at 24 (citing *Ex parte Liberty*

41

*Nat. Life Ins. Co.*, 797 So.2d 457, 465 (Ala. 2001)). But *Liberty* predates the more recent Alabama Supreme Court decision in *Freightliner* holding as a matter of law that a commercial transaction does not generate a duty to disclose. And to the extent that *Liberty* applies, the case is inapposite. The *Liberty* court found that a corporation had a contractual duty to disclose information to a plaintiff with a "fourth-grade" reading level. 797 So.2d at 465. But the fuel rebate contract at issue here is an agreement between two companies. In the absence of an independent duty of Pilot Travel Centers, LLC to disclose information, HB cannot successfully defeat the motion to dismiss the claim for suppression.

HB does succeed on its claims for fraudulent inducement and negligent misrepresentation. HB claims that in February of 2010, Pilot Travel, LLC's Vice President of Sales, John Freeman, promised HB's president discounts on fuel purchases. R. 113 ¶¶ 8–9. Specifically, HB alleges that John Freeman offered a rebate measured by the difference between the retail price of diesel and twenty-five cents above Pilot Travel Centers, LLC's fuel costs. *Id.* HB notes that Freeman made the offer either in person or through email or telephone at HB's principal place of business. *Id.* ¶ 6. At the same time, HB contends, Pilot Travel Centers, LLC had no intention to keep its promise when it offered the fuel rebate deal. *Id.* ¶ 61. HB claims that Pilot Travel Centers, LLC made the statements with the intent of misleading HB into entering into the fuel-rebate contract. *Id.* ¶ 65. Alternatively, HB alleges that Pilot Travel Centers, LLC made statements about the rebate deal with "recklessness as [to] their truth" because employees like Freeman knew that the Pilot Defendants habitually withheld rebates. *Id.* ¶ 64. HB indicates that it believed Pilot Travel Centers, LLC's statements and purchased less fuel from competitors, thereby experiencing overcharges. *Id.* ¶ 62.

Together, the facts cover all the elements of a claim for fraudulent inducement.  *See Evans*, 267 So.2d at 450.  And the facts provide the necessary detail to meet the pleading requirements of Rule 9(b).  HB specifies the time and place of the misrepresentation that induced it to enter into the rebate agreement.  R. 113 ¶¶ 6, 8, 9.  HB also describes the details of the misrepresentation and identifies the speaker, Mr. Freeman.  *Id.* ¶¶ 8–9.  Consequently, HB can move forward on its claim for fraudulent inducement.

These facts are also sufficient to state a claim for negligent misrepresentation.  *See Resolution Trust Corp. v. Mooney*, 592 So.2d 186, 188 n.2 (Ala. 1991) (citing to Ala. Code § 6-5-101).  To bring a claim for negligent misrepresentation, a plaintiff must plead that a defendant (1) mistakenly or innocently (2) misrepresented (3) a material fact, (4) which was acted on by the plaintiff.  Ala. Code § 6-5-101 (2014).  Unlike actions for fraudulent misrepresentation, however, no cases preclude plaintiffs from maintaining a suit for both breach of contract and negligent misrepresentation.  The Pilot Defendants read such an element into the rule by citing to a district court case.  *See* R. 126-4 at 46 (citing to *Overton v. Wyeth, Inc.*, No. CA 10-0491-KD-C, 2011 WL 1343392, at *6 (S.D. Ala. Mar. 15, 2011)).  But *Overton* is a products liability case where the plaintiffs were not in a contractual relationship with the defendant drug manufacturer.  The case is silent about whether a plaintiff can maintain a negligent misrepresentation claim alongside an action in contract.  Indeed, the language in the case actually leaves open the possibility that parties who are in privity of contract with a defendant may bring negligent misrepresentation claims.  *Id.* at *6.

HB pled sufficient facts to identify at least one misrepresentation with sufficient particularity as to meet the requirements of Rule 9(b).  And the facts suggest that the misrepresentation is material because it concerns the price of fuel—the only term of the fuel

rebate deal.  For these reasons, HB can survive the motion to dismiss its claim for negligent misrepresentation

### B.   FST pleads facts to state a claim for fraudulent inducement but not for fraud under Ohio law.

Under Ohio law, a breach of contract cannot support a tort claim, no matter how "unlawful, willful, wanton and malicious" the breach.  *See Curran v. Vincent*, 885 N.E.2d 964, 967 (Ohio Ct. App. 2007) (citing *Ketcham v. Miller*, 136 N.E. 145 (Ohio 1922)).  But that does not prevent a plaintiff from bringing a fraud claim.  To do so, the plaintiff must plead two things:  (1) that the defendant "breache[d] a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed," and (2) there are damages attributable to the tort in addition to those attributable to the breach of contract.  *See Prater v. Three C Body Shop, Inc.*, No. 01AP -950, 2002 WL 479827, at *4 (Ohio Ct. App. Mar. 29, 2002) (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* 684 N.E.2d 1261 (1996), *discretionary appeal not allowed* in 676 N.E.2d 531 (1996)).

A case from the Ohio Court of Appeals is instructive here.  The plaintiff, Ineos, contracted with the defendant, Furmanite, to monitor and repair leaks at Ineos's chemical facility.  *See Ineos USA L.L.C. v. Furmanite, Am., Inc.*, No. 1-14-06, 2014 WL 5803042, at *1 (Ohio Ct. App. Nov. 10, 2014).  Furmanite apparently did not hold up its end of the bargain, because Ineos was fined for its leaky facility.  *Id.*  Ineos filed suit against Furmanite, alleging that Furmanite failed to perform its contractual obligations by overlooking leaks and not conducting adequate monitoring.  *Id.*  Ineos also claimed that Furmanite misrepresented the procedures it used to conduct the monitoring and never disclosed that it was not actually complying with the contract.  *Id.*  The misrepresentation and concealment, Ineos claimed,

justified recovery in tort for fraud. *Id.* The court found that there was a genuine issue of fact about what duties arose from the contract—specifically, if the contract prescribed specific monitoring procedures. *Id.* at *7. The court held that if failing to use particular monitoring procedures was not a breach of the contract, misrepresentations related to that failure may give rise to a fraud claim. *Id.*

FST relies on the *Ineos* case for the rule that a breach of contract does not preclude an action for fraud based on the defendant's steps to conceal the breach. *See* R. 149 at 2. But that phrasing misstates the rule of *Ineos*. Rather, a breach of contract does not preclude an action for fraud where the fraud arises out of conduct other than the cover-up of a breach. Unlike Furmanite, who allegedly concealed activity that was not itself a breach of contract, Pilot Travel Centers, LLC allegedly committed fraud by concealing its underpayment of a contractual obligation. *See* R. 130 at 15 (claiming that Pilot Travel Centers, LLC hid "the fact that it was cheating [FST] out of the price deals it had promised in the first place"); *id.* (claiming that Pilot Travel Centers, LLC committed fraud by charging for additional costs not disclosed in the agreement); R. 149 at 4 (identifying as a basis of the claim for fraud Pilot Travel Centers, LLC's representations that a computer glitch caused a rebate reduction in violation of the agreement); *id.* (claiming that Pilot Travel Centers, LLC made misrepresentations by overcharging FST so that FST "was paying more than the parties had agreed"). FST justifies bringing a fraud claim on the basis of these statements because the statements "go far beyond mere allegations of intentional or malicious breach of contract." *See* R. 149 at 5. But under Ohio law, the statements do not go far enough. Pilot Travel Centers, LLC's statements are nothing more than misrepresentations about the underpayment of the rebate, which is a breach of the agreement to pay rebates. So FST cannot bring a

claim for fraud on the basis that Pilot Travel Centers, LLC misrepresented that it was complying with the rebate and discount agreements.

But a plaintiff can bring a fraudulent inducement claim under Ohio law. *See ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998). In an action for fraudulent inducement, a plaintiff must allege the following three elements: (1) that the defendant made a knowing and material misrepresentation (2) with the intent of inducing the plaintiffs' reliance, and (3) that the plaintiff relied upon the misrepresentation to his detriment. *See Beer v. Griffith*, 399 N.E.2d 1227, 1231 (Ohio 1980). FST alleges that it stated sufficient facts to bring a claim for fraudulent inducement. *See* R. 130 at 15; R. 149 at 5. FST does not need to label its cause of action as a fraudulent inducement claim in the complaint to state a claim. As long as FST stated sufficient facts to adequately plead the elements of a fraudulent inducement claim, its cause of action may survive the motion to dismiss. *See Johnson*, 135 S. Ct. at 346.

FST alleges that in 2005 and 2011, Pilot Travel Centers, LLC promised to send FST President Dave Kent rebate checks. R. 112 ¶¶ 14, 16. Some of the agreed rebates were for at least five and six cents per gallon of fuel purchased at select Pilot retailers. *Id.* FST claims that Pilot Travel Centers, LLC acted through its employees Spiewak, Ralenkotter, and Welch to make the representations. *Id.* ¶ 72. FST further specified that Pilot Travel Centers, LLC's representatives made at least one misrepresentation on July 25, 2011 through email. In that communication, Pilot Travel Centers, LLC promised FST the better price of the retail price of fuel minus five cents or the actual cost of fuel plus one cent. *Id.* ¶ 16. FST alleges that Pilot Travel Centers, LLC knew it was making false representations, and knew that FST would be misled by the statements to agree to the deal. *Id.* ¶¶ 72, 73. FST claims that when

46

Pilot Travel Centers, LLC made the promises, it "never intended to keep them." *Id.* ¶ 69. FST claims that because of Pilot Travel Centers, LLC's promised rebates, it purchased fuel from Pilot Flying J retailers instead of competitors and experienced overcharges. *See id.* ¶¶ 11, 70, 75.

Taken together, these facts fulfill both the elements of a fraudulent misrepresentation claim and the pleading requirements of Rule 9(b). Pilot Travel Centers, LLC's statements were misrepresentations because FST never received the discounts and rebates promised. The misrepresentations were material because they concerned a key term of the agreement— the size of the rebate. And FST claims that it suffered from relying on the misrepresentations by purchasing fuel from Pilot Travel Centers, LLC and incurring high charges. Moreover, FST stated the time, place, and content of the misrepresentations. R. 112 ¶¶ 6, 14, 16, 72. FST also provided the names of individuals who uttered the fraudulent statements. *Id.* ¶ 72. Finally, FST alleges that Pilot Travel Centers, LLC benefitted financially from withholding rebates. R. 112 ¶¶ 42–43. These facts make plausible the allegations that Pilot Travel Centers, LLC intended, or at least knew, that it was committing fraud. *Republic Bank & Trust Co.*, 683 F.3d at 247. For these reasons, only FST's claim for fraudulent inducement survives the Pilot Defendants' motion to dismiss.

### C.   NRT and KFC state claims for fraud, conspiracy to commit fraud, aiding and abetting fraud, fraudulent inducement, and equitable fraud against Pilot Travel Centers, LLC.

NRT and KFC bring five causes of action sounding in fraud: R. 104 at 24 (fraud); *id.* at 49 (conspiracy to commit fraud); *id.* at 51 (fraudulent inducement); *id.* at 52 (aiding and abetting fraud); *id.* at 54 (equitable fraud). Many of those claims flow from Pilot Travel Center, LLC's failure to provide rebates as promised in its fuel rebate agreements, for which

NRT and KFC bring a claim for breach of contract.  *See id.* at 21.  New Jersey law is not clear about what types of fraud claims a plaintiff may bring in conjunction with a breach of contract claim.  *See, e.g.*, *Montclair State Univ. v. Oracle USA, Inc.*, Civ. No. 11-2867(FLW), 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (observing that in the past twenty-two years, the New Jersey Supreme Court "has still not expressed its view on what . . . fraud claims may proceed alongside breach of contract claims"); *Gleason v. Nw. Mortg. Inc.*, 243 F.3d 130, 144 (3d Cir. 2001) (noting that New Jersey law on this topic is a "morass").

New Jersey law prohibits plaintiffs from stating claims for both fraud and breach of contract where the fraud is not "extraneous" to the contractual dispute.  Fraud is "extraneous" to the contract where it induces a party to enter into the contract.  *See Rainbow Apparel, Inc. v. KCC Trading, Inc.*, Civ. No. 9-cv-05319, 2010 WL 2179146, at *10 (D.N.J. May 26, 2010) ("When analyzing the permissibility of fraud claims . . . New Jersey state and federal courts have drawn a distinction between allowable claims 'extrinsic to the contract,' such as those alleging 'fraud in the inducement' of a contract, and impermissible claims based upon a fraud in the performance of the contract."); *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1032–33 (D.N.J. 1995); *Foodtown v. Sigma Marketing Sys., Inc.*, 518 F. Supp. 485, 490 (D.N.J. 1980).  Fraud is also extraneous where it amounts to an independent false statement about an intent to honor a promise.  That false statement is a "misstatement of present fact and breaches a separate and extraneous duty not to commit fraud."  *Emerson Radio Corp. v. Orion Sales, Inc.*, No. Civ. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000).  Fraud, however, is not extraneous to the contract where the allegation is that the

defendant simply breached the contract in a fraudulent manner. *Foodtown*, 518 F. Supp. at 490.

Based on the weight of authority from New Jersey Courts, and for the reasons provided below, NRT and KFC may move forward on their claims for fraud, fraudulent inducement, aiding and abetting fraud, conspiracy to commit fraud, and equitable fraud.

> 1) **NRT and KFC's claims for fraudulent misrepresentation, fraudulent inducement, and conspiracy to commit fraud survive the motion to dismiss as against Pilot Travel Centers, LLC.**

To prove a claim for fraudulent misrepresentation that is extraneous to the contract, a plaintiff must show "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages." *West v. IDT Corp.*, No. 01-4372(WHW), 2008 WL 762459, at *11 (D.N.J. Mar. 19, 2008). Courts apply the same test for claims of fraudulent inducement. *See, e.g.*, *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-6590(SDW)(MCA), 2013 WL 1431680, at *7 (D.N.J. Apr. 9, 2013).

NRT and KFC point to four facts to establish a claim for fraudulent inducement on the part of Pilot Travel Centers, LLC and employees Hite, Prins, and Wombold. R. 104 at 51. First, NRT and KFC claim that Wombold called their offices in New Jersey in 2008 and stated that Pilot Travel Centers, LLC, would continue to pay monthly rebates for fuel purchased at its retail outlets. *Id.* at 26. NRT and KFC allege that Wombold knew at the time he made those statements that they were false. In support of this allegation, the plaintiffs state that Wombold had acted on behalf of the Pilot Defendants since 2004 and that the Pilot Defendants had reduced monthly rebate checks before 2008. *Id.* at 16. Yet NRT and KFC claim Wombold wanted the plaintiffs to rely on the statements. *Id.* Second, NRT

49

and KFC claim that Prins and Hite met with them often in their New Jersey offices between 2004 and 2013. *Id.* at 16. At these meetings, NRT and KFC claim that Prins and Hite maintained that the plaintiffs "had received, and would continue to receive" the full amount of the promised rebate values. *Id.* However, NRT and KFC plead that Prins and Hite never meant those statements. *Id.* Instead, NRT and KFC claim that Prins and Hite made those misrepresentations knowing that NRT and KFC would rely on the assurances to continue purchasing fuel from Pilot. *Id.* at 16–17.

Third, NRT and KFC claim that they relied on the misrepresentations to continue purchasing fuel from the Pilot Defendants' retail outlets instead of from a competitor at a lower price. *Id.* at 14, 19–20 (alleging that the plaintiffs were deprived of the proper rebate amount and the abilities to purchase fuel at a lower price and negotiate rebates with competing diesel vendors). Fourth, NRT and KFC maintain that they suffered injury from relying on the misrepresentations by being deprived of their rebate and the opportunity to purchase fuel from another source. *Id.*

Taken together, these facts state a claim for fraudulent inducement and meet the particular pleading requirements of Rule 9(b). For one, the misrepresentations that NRT and KFC identify are not simply reductions in the promised fuel rebate. The statements by Prins, Hite, and Wombold were independent false statement about Pilot Travel Centers, LLC's intent to honor a promise. *Emerson Radio Corp.*, 2000 WL 49361, at *7. And in their complaint and bill of particulars, NRT and KFC allege that Pilot Travel Centers, LLC sent monthly fraudulent statements by mail in addition to sending monthly rebate checks. R. 104 at 18, 24–25, 37. The statements indicated that the plaintiffs received the full rebate amount that Pilot Travel Centers, LLC promised when in fact the plaintiffs received much less. *Id.* at

50

24–25.  The plaintiffs relied on these statements as assurances that they were receiving the benefit of the bargain, and accordingly continued to purchase fuel from the Pilot Defendants. *Id.*  Therefore, the fraudulent statements are extrinsic to the rebate contract promising a rebate for fuel purchases, and can form the basis of a claim of fraudulent misrepresentation or inducement.

Second, NRT and KFC identify the time, place, and speaker associated with the fraudulent statements.  *See* R. 104 at 16, 26 (stating the date of a meeting during which Pilot representatives promised that NRT and KFC had received, and would continue to receive, the full amount of their rebates).  Third, the plaintiffs note that the statements are fraudulent because they misrepresent the fact that Pilot Travel Centers, LLC did not—and never intended to—pay the full price of the promised rebate.  *Id.* at 16.  Finally, the plaintiffs state facts about the competing fuel prices being lower to plausibly suggest that they were injured by relying on the misrepresentations.  NRT and KFC plead facts about Pilot Travel Centers, LLC's and its employees' states of mind which, accepted as true, make the state-of-mind allegation "plausible on its face."  *Republic Bank & Trust Co.*, 683 F.3d at 247.  For example, NRT and KFC claim that Pilot employees manually lowered the value of the rebate due to customers.  R. 104 at 19.  And they allege that the Pilot employees chose to enter into agreements with unsophisticated parties.  *Id.*  NRT and KFC also point to the fact that the employees held meetings at which they discussed how to train other employees to manually reduce rebates.  *Id.* at 11.  These facts suggest that Pilot Travel Centers, LLC intended to carry out fraud.  So in sum, the totality of the allegations in the complaint "possess enough heft" to show that NRT and KFC can recover on a fraudulent inducement claim.  *Twombly*,

550 U.S. at 557.  The plaintiffs do not, however, allege that Pilot Corporation or Propeller induced them to enter into contracts through its employees.

NRT and KFC also identify statements that can form the basis of a fraudulent misrepresentation claim.  They allege that the Pilot Travel Centers, LLC sent monthly statements representing that the plaintiffs were receiving the full value of the promised rebate.  *See* R. 104 at 15, 19, 24–25.  According to NRT and KFC, the representations were fraudulent because the statements did not reflect that the plaintiffs were receiving less than the promised rebate.  *Id.* at 25.  NRT and KFC maintain that Pilot Travel Centers, LLC knew that the statements were misleading, yet disseminated them on a monthly basis in order to ensure that NRT and KFC continued to participate in the fuel-rebate contract.  *Id.* at 18, 19. By believing the statements were accurate, NRT and KFC plead that they were harmed by not being able to purchase fuel from other vendors at a cheaper rate.  *Id.* at 14.

The misrepresentations in the monthly statements may serve as a basis for a fraudulent misrepresentation claim.  For one, NRT and KFC identify the times, the speaker, and the location of the misrepresentations as being every month by Pilot Travel Centers, LLC, and through mail to NRT and KFC's place of business.  R. 104 at 15, 19, and 24–25. NRT and KFC list a number of discrete dates on which Pilot Travel Centers, LLC made misrepresentations in statements to the plaintiffs.  *See, e.g.*, R. 104 at 17–18.  NRT and KFC also note that each statement was fraudulent because it purported to state that the plaintiffs were receiving full rebates although the plaintiffs never did.  The plaintiffs also state facts that suggest that they relied on the misrepresentations in a manner that harmed them.  NRT and KFC claim that they refrained from purchasing fuel from other retailers at low prices in order to uphold their bargain with Pilot Travel Centers, LLC.  *Id.* at 14.  By pleading these

facts, NRT and KFC meet the plain-language requirements of Rule 9(b).  Nothing in the rule requires the plaintiffs to identify particular dates on which the defendants made their misrepresentations.

But to serve as a basis for a fraudulent misrepresentation claim, the statements must be different than just a lower rebate check value.  Why?  Because the payment value of the rebate check is not extrinsic to the contract—it is the performance of the contractual obligation.  Put it this way:  By paying a check for a lower sum of money than it promised, Pilot Travel Centers, LLC is just breaching its contract.  While it may also technically be misrepresenting the value of its promise, its conduct is not extrinsic to the contract and is merely a fraudulent performance of the contract.  And under New Jersey law, only a misrepresentation that is "extrinsic" to the performance of contractual obligations can serve as the basis of a fraudulent misrepresentation claim.  *See Rainbow Apparel, Inc.*, 2010 WL 2179146 at *10.  But by mailing a separate statement that misrepresented the fact that it was not paying the promised rebate, Pilot Travel Centers, LLC made a misrepresentation extrinsic to the contract.  (The defendants do not argue that providing the statements was an obligation under the contract.)  NRT and KFC can therefore bring a fraudulent misrepresentation claim on the basis that the Pilot Travel Centers, LLC sent regular statements containing false representations about its fuel rebates.  The plaintiffs, however, do not allege that Pilot Corporation or Propeller made any fraudulent statements.  NRT and KFC only claim that Pilot Corporation and Propeller lowered rebates.  But lowering rebates is not conduct that is "extrinsic" to the performance of the contract.  Thus, the facts do not support a claim for fraudulent misrepresentation against Pilot Corporation or Propeller.

The Pilot Defendants seek to dismiss NRT and KFC's claims for conspiracy to commit fraud. *See* R. 126-4 at 37. Propeller also joins this argument. *See* R. 151 at 1. They argue that the plaintiffs do not state a valid fraud claim because their grievances lie in contract. *See id.* But, as discussed above, NRT and KFC state sufficient facts to give rise to an independent claim for fraud under New Jersey law against Pilot Travel Centers, LLC. So the Court will not dismiss the related count for conspiracy to commit fraud on the basis that the plaintiffs improperly repackaged a contract claim as a fraud claim.

> **2)      NRT and KFC allege sufficiently specific facts to state a claim for equitable fraud against Pilot Travel Centers, LLC.**

The elements of a claim for equitable fraud are similar to those of legal fraud. *See Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981). Namely, a plaintiff must plead a (1) a material misrepresentation of (2) a presently existing or past fact resulting in (3) reliance by the plaintiff to his detriment. *Id.* Unlike in an action for legal fraud, however, the plaintiff need not show that the defendant made a misrepresentation with any knowledge of its falsity or intention that the other party rely on the misrepresentation. *Id.*

NRT and KFC can succeed on their claim for equitable fraud for the same reasons they can succeed on their claims for fraudulent misrepresentations. As described above, the plaintiffs state sufficient facts to plead that Pilot Travel Centers, LLC, through its employees, made periodic fraudulent statements about the plaintiffs' benefits under the fuel-rebate agreement. Because the plaintiffs can meet the elements for a fraudulent misrepresentation claim against Pilot Travel Centers, LLC, they can necessarily meet the elements for a subset of that claim that amounts to an action in equitable fraud.

### 3) NRT and KFC allege sufficient facts to state a claim for aiding and abetting fraud as to Pilot Travel Centers, LLC.

Under New Jersey law, a plaintiff states a claim for aiding and abetting fraud by pleading: (1) an underlying fraud, (2) the defendant's knowledge of the fraud; and (3) substantial assistance or encouragement by the defendant in the fraud. *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (citing Restatement (Second) of Torts § 876(b)). The Pilot Defendants seek to dismiss the claim for aiding and abetting fraud as to them for two reasons: (1) NRT and KFC failed to state a claim for fraud and (2) NRT and KFC failed to explain how the Pilot Defendants provided "substantial assistance" in the fraud. *See* R. 126-4 at 47.

As explained above, NRT and KFC pled sufficient facts to state a claim for fraud under New Jersey law against Pilot Travel Centers, LLC. So the first basis for dismissing the count for aiding and abetting fraud fails. Whether NRT and KFC demonstrated that the defendants substantially assisted the fraud is another question. Throughout their complaint, NRT and KFC allege facts that, if taken as true, state a plausible claim that Pilot Travel Centers, LLC provided "substantial assistance" in carrying out its own fraud. For example, the plaintiffs claim that Pilot Travel Centers, LLC, solicited the plaintiff's participation in the fuel-rebate program. *See* R. 104 at 13. NRT and KFC also claim that Pilot Travel Centers, LLC, through its employees, instructed other individuals about how to perpetuate the fraud on unsuspecting plaintiffs. *Id.* at 11. But NRT and KFC do not argue how Pilot Corporation or Propeller substantially assisted fraud by engaging in the non-fraudulent conduct of sending checks. It is not apparent how breaching a contract by sending a lower rebate than promised assists in mailing fraudulent statements on a monthly basis. At this stage of the

55

litigation, these facts are sufficient to allow NRT and KFC to only proceed on their claim that Pilot Travel Centers, LLC aided and abetted fraud.

## IV.      Additional Claims Sounding in State Law

The plaintiffs bring assorted claims under a variety of state causes of action—some sounding in common law and others in statute.  For the reasons articulated below, none of the plaintiffs can maintain actions for conversion.   However, some of the plaintiffs may plead relief for unjust enrichment and for relief under various states' consumer protection statutes.

### A.      Shoreline, Osborn, NRT, and KFC cannot bring claims for conversion.

Both Alabama and New Jersey law preclude actions for conversion to recover a debt—a yet-unpaid sum of money.  *See, e.g.*, *Willingham v. United Ins. Co. of Am.*, 628 So.2d 328 (Ala. 1993) (quoting *Lewis v. Fowler*, 479 So.2d 725, 727 (Ala. 1985)) ("[W]here there is 'only a relationship of debtor or creditor, an action for conversion of funds representing the indebtedness will not lie against the indebtor.'"); *see also Advanced Enters. Recycling, Inc. v. Bercaw*, 869 A.2d 468, 472 (N.J. App. Div. 2005) ("An action for conversion will not lie in the context of a mere debt or chose in action, however. Where there is . . . only a relationship of a debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.") (quoting 18 Am.Jur.2d Conversion § 8 (2004)).  An action for conversion involving money can only lie where the plaintiff claims that the defendant has an obligation to return specific, identical money that previously belonged to the plaintiff.  *SouthTrust Bank v. Donely*, 925 So.2d 934, 939–40 (Ala. 2005); *Advanced Enters.*, 869 A.2d at 472.

The plaintiffs ask for the return of an uncertain sum, not identifiable monies that they previously owned.  For these reasons, none of the plaintiffs can maintain conversion claims

in this litigation as a matter of law.  The parties, however, disagree.  Shoreline argues that its rebates in arrears are "particular, identifiable sums of money" that the Pilot Defendants stole and that the parties are not in a debtor-creditor relationship.  R. 131 at 11.  But the facts of the complaint do not "plausibly suggest" that Shoreline can succeed on its conversion claim. Shoreline does not state how it first came into possession of all the money owed under the rebate contract such that the Pilot Defendants subsequently stole the money from them. Absent any facts that suggest that sequence of events, Shoreline merely seeks to recover a yet-unpaid monetary obligation under the rebate agreement.  These funds, by definition, amount to a debt.  *See* Black's Law Dictionary 488 (10th ed. 2014) (defining the term "debt" as a "sum of money due by agreement").  Accordingly, Shoreline cannot bring a conversion claim to recover its missing funds under the rebate agreements.

For similar reasons, Osborn cannot prevail on its conversion claim.  Osborn argues that because it can "clearly identify the money at issue," conversion is the appropriate legal vehicle to recover the sums.  *See* R. 69 at 9–10.  But Osborn does not identify the money that it seeks to recover.  Rather, Osborn only claims that it can identify the bank from which the Pilot Defendants paid their rebates.  But that is not the same as identifying the "money at issue*." Greene County Bd. of Educ. v. Bailey*, 586 So.2d 893, 898 (Ala. 1991).  At best, Osborn can identify the source from which any money will be paid to it.  In the absence of facts tracing a discrete sum of money that Osborn owned and the Pilot Defendants took, Osborn merely holds a debt in the yet-unpaid rebates.  Accordingly, Osborn cannot bring a conversion claim.

NRT and KFC concede that "civil theft is not established by the mere failure to abide by a contract."  *See* R. 136 at 23.  Yet they maintain that their action for conversion is

appropriate.  Why?  Because NRT and KFC claim that by first calculating the rebate due and then reducing the amount manually before writing a check, the Pilot Defendants and Propeller "stole" money.  Like Shoreline and Osborn, NRT and KFC fail to plead facts that suggest that they had any type of ownership in the rebate payments.  So the facts in the plaintiffs' complaint do not "plausibly suggest" that by reducing the amounts owed, the Pilot Defendants and Propeller took money away from NRT and KFC.  *See Twombly*, 550 U.S. at 557.  Accordingly, NRT and KFC cannot maintain an action for conversion under New Jersey law.

### B.      Osborn, NRT, and KFC plead claims for unjust enrichment, but FST and HB do not.

Proving unjust enrichment requires a plaintiff to show that the defendant retains money or benefits "which in justice and equity belong to another."  *See, e.g.*, *Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837, 843 (Ala. 2004); *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007); *Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio*, 532 N.E.2d 124, 125 (Ohio 1988).  The Pilot Defendants seek to dismiss the plaintiffs' claims for unjust enrichment because the plaintiffs also bring claims for breach of contract.  *See* R. 126-4 at 55–57.  The Pilot Defendants cite to cases noting that the remedy for unjust enrichment is mutually exclusive with the remedy for damages sounding in contract.  *Id.* Because the plaintiffs all state claims for breach of contract, the argument goes, they cannot also recover through an action for unjust enrichment.  So their claims for unjust enrichment should be dismissed.

The logic that the Pilot Defendants introduce has a serious wrinkle:  What would happen if the plaintiffs could not succeed on their contract claims after the Court dismissed

their unjust enrichment causes of action? Would the plaintiffs be barred from recovering anything for their injuries as a matter of law? This is not a far-fetched hypothetical. Indeed, the Pilot Defendants even contend that the plaintiffs should not recover in contract because they fail to state a valid claim for breach. R. 126-4 at 57. Taken to the extreme, the Pilot Defendants' argument would not allow plaintiffs to plead alternate or inconsistent claims for relief. Why? Because plaintiffs ordinarily recover compensation for their injuries based on one legal theory, so any other theories of recovery would be barred. Here, the plaintiffs may plead their unjust enrichment claims in the alternative. *Dzielak v. Whirlpool Corp.*, No. 2:12-0089 KM, 2014 WL 2758746 (D.N.J. June 16, 2014) (holding that unjust enrichment and contract claims are pled in the alternative); *Camp v. Alabama Telco Credit Union*, No. 2:12-CV-2237-LSC, 2013 WL 2106727, at *6 (N.D. Ala. May 13, 2013) (same); *Nessle v. Whirlpool Corp.*, No. 1:07-CV-3009, 2008 WL 2967703, at *6 (N.D. Ohio July 25, 2008) (noting that the plaintiff could plead alternative claims for unjust enrichment and breach of contract); *see* Fed. R. Civ. P. 8(a)(3) (permitting plaintiffs to bring claims for "alternative or different types of relief"); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Accordingly, the Pilot Defendants' first argument for dismissing the unjust enrichment claims fails.

The Pilot Defendants' second argument applies only to the claims against Pilot Corporation and the individual defendants. The Pilot Defendants argue that the plaintiffs do not state sufficient facts to show that Pilot Corporation or the individual defendants received a benefit from their wrongful actions. But Osborn states facts that give rise to a plausible claim that Pilot Corporation obtained a benefit from the rebate-reduction scheme. *See* R. 25 ¶ 12 (claiming that the rebate fraud substantially increased Pilot Corporation's profits). So

do NRT and KFC, at least as to the individual defendants.  *See* R. 104 at 15 (noting that individual defendants profited from the scheme in the form of receiving "increased commission and bonuses").

But NRT and KFC provide only a legal conclusion and no facts to support their claim that Pilot Corporation obtained an unjust benefit from reducing rebate payments.  *See* R. 104 at 3 ("Pilot Corporation . . . benefited from the fraudulent conduct set forth herein.").  And NRT and KFC do not allege facts that plausibly suggest that Propeller actually received a benefit from the rebate-reduction scheme.  Similarly, FST and HB only provide a "formulaic recitation" of the elements of an unjust enrichment claim to show that Pilot Corporation received a benefit from its allegedly wrongful conduct.  *Twombly*, 550 U.S. at 545; *see also* R. 112 ¶ 99 ("Plaintiff conferred a benefit upon Defendant, Defendant retained benefits, and Defendant received and retained these benefits under such circumstances that it would be inequitable and unconscionable to permit Defendant to retain this benefit without paying its reasonable value to Plaintiff"); R. 113 (same).  To survive a motion to dismiss, these allegations will not do.  The plaintiffs must state some facts that suggest that Pilot Corporation actually received a benefit.  NRT and KFC do not actually claim that Pilot Corporation or Propeller's own profits increased.  And the plaintiffs cannot dodge a motion to dismiss by alleging that others took action to benefit Pilot Travel Centers, LLC, without actually asserting that the benefit inured.  That is what FST and HB pled.  *See, e.g.*, R. 112 ¶ 59 (claiming that individuals conspired to commit mail and wire fraud in order to benefit the defendant, but not asserting that the defendant received any benefit); R. 113 ¶ 53 (same).  For these reasons, NRT and KFC's claims for unjust enrichment against Pilot Corporation

and Propeller do not survive the motion to dismiss.  Similarly, neither FST nor HB state claims for unjust enrichment against Pilot Travel Centers, LLC.

### C.     FST and HB state one plausible claim for violation of the Tennessee Consumer Protection Act but Osborn states none.

The Tennessee Consumer Protection Act prohibits, among other things, the following acts:  "Representing that goods or services have . . . benefits . . . that they do not have;" "[a]dvertising goods or services with intent not to sell them as advertised"; and "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  *See* Tenn. Code Ann. § 47-18-104(b)(5), (b)(9), and (b)(11).

The plaintiffs do not plead a plausible claim for relief under § 47-18-104(b)(5). Neither FST nor HB states facts to show how Pilot Travel Centers, LLC misrepresented the attributes of diesel fuel under § 47-18-104(b)(5) (prohibiting defendants from "representing that goods or services have . . . benefits . . . that they do not have").  In each bill of particulars, FST and HB suggest that the "benefit" of the diesel fuel was the discount that Pilot Travel Centers, LLC promised for purchasing the fuel.  *See* R. 114 at 7; R. 116 at 13. But that argument requires a bizarre reading of the statute.  The benefit of a particular good is an advantage that the good itself confers—not the fact that the good may be purchased at a discount.  Nobody touts as a "benefit" of consuming fruits and vegetables their sale price at the grocery store.  Nor, for example, is it conventional to think as one of the benefits of a gym membership the reduced first month's fee for new members.  Based on the allegations in the complaint, therefore, FST and HB do not advance a "plausible" claim for relief under § 47-18-104(b)(5).

The plaintiffs fare no better with the next provision, § 47-18-104(b)(9).  The section prohibits "[a]dvertising goods or services with the intent not to sell them as advertised." Tenn. Code Ann. § 47-18-104(b)(9).  But what does it mean to "advertise"?  The statute is silent as to that term.  The plain meaning of "advertise" is to "make the public aware of something . . . that is being sold."  *See* Webster's Third New International Dictionary 31 (2002).  And that is consistent with the meaning the defendants introduce in their motion to dismiss.  *See* R. 126-4 at 54 (citing *Carbon Processing and Reclamation, LLC v. Valero Marketing & Supply Co.*, 694 F. Supp. 2d 888, 914 (W.D. Tenn. 2010) (interpreting the plain meaning of the term "advertise" in § 47-18-104(b)(9))).  The plaintiffs do not argue that the term "advertise" has a different meaning.  *See* R. 130 at 30.  Nor do they develop facts in their complaint to suggest that Pilot Travel Centers, LLC advertised the rebates to the public. Rather, they claim that Pilot Travel Centers, LLC solicited business on an individual basis. *See* R. 112 ¶ 6; R. 113 ¶ 6.

But FST and HB plead facts that show that they can advance a claim under § 47-18-104(b)(11) (prohibiting defendants from "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions").  A plaintiff's claims under the Tennessee Consumer Protection Act are subject to Rule 9(b)'s particularity requirements.  *See Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (relying on *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 274, 275 (Tenn. Ct. App. 1999)).  Here, the promised discounts and rebates are price reductions.  As discussed in the context of their fraud claims, FST and HB identify misrepresentations related to the discounts and rebates with sufficient particularity to meet the requirements of Rule 9(b).  However, as discussed above, Osborn cannot make the required showing of

particularity to state a claim for misrepresentation.  Accordingly, FST and HB state facts that give rise to a "plausible claim" under § 47-18-104(b)(11) of the Tennessee Consumer Protection Act while Osborn does not.

**D.   NRT and KFC state claims for violations of the New Jersey Consumer Fraud Act and related regulations.**

NRT and KFC, as plaintiffs from New Jersey, allege violations of the New Jersey Consumer Fraud Act.  Under the New Jersey Consumer Fraud Act, a defendant may not use fraud, misrepresentation or the suppression of any material fact with the intent that others rely upon such suppression or omission in the sale or advertisement of any merchandise.  *See* N.J. Stat. Ann. § 56:8-2; *see also* N.J. Admin. Code § 1345.A-9.2(a)(9) (prohibiting similar actions).  The statute defines the term "advertisement" to include "solicitation."  *See* N.J. Stat. Ann. § 56:8-1(a).  And the term "merchandise" includes any "goods, commodities, services, or anything offered, directly or indirectly to the public for sale."  *Id.* § 56:8-1(c).

The Pilot Defendants argue that NRT and KFC cannot prevail on their claim under the statute because the purchase of diesel fuel "pursuant to an individualized rebate or discount agreement" was not available to the public at large.  R. 126-4 at 50.  In making this argument, however the Pilot Defendants overlook the fact that what must be available to the public is not the same discount, but the object of the sale.  In this case, that is diesel fuel. The cases that the Pilot Defendants cite are inapposite, as they involve specialized and customized goods.  *See, e.g.*, *Interactive Logistics, Inc. v. Answerthink, Inc.*, Civ. 01-0214, 2001 WL 1825982, at *5 (D.N.J. Dec. 18, 2001) (granting motion to dismiss for sale of customized computer equipment); *Arc Networks, Inc. v. Gold Phone Card Co.*, 756 A.2d 636, 637 (N.J. Super. Ct. Ch. Div. 2000) (holding that long-distance telephone calling

services were not available to the general public).  In contrast, it is plausible that diesel is a commodity that qualifies as merchandise under the statute.

As discussed above, NRT and KFC only state a claim for fraudulent misrepresentation against Pilot Travel Centers, LLC that meets the pleading requirements of Rule 9(b).  NRT and KFC pled the dates and places where Pilot Travel Centers, LLC misrepresented the fuel rebate deal.  NRT also claimed that Pilot Travel Centers, LLC intended that NRT and KFC rely on the misrepresentation to continue purchasing fuel from them instead of negotiating with competitors.  R. 104 at 18, 19.  Based on these allegations, NRT's and KFC's claims for violation of the New Jersey Consumer Fraud Act and related regulations survive, but only as to Pilot Travel Centers, LLC.

### E.    Only one of FST's claims for violation of Ohio's Deceptive Trade Practices Act survives the motion to dismiss.

Like its Tennessee counterpart, Ohio's Deceptive Trade Practices Act prohibits, among other acts:  Represent[ing] that . . . goods or services . . . have . . . characteristics [or] benefits . . . that they do not have; advertis[ing] services with intent not to sell them as advertised; and mak[ing] false statements of fact concerning the reasons for, existence of, or amounts of price reductions.  *See* Ohio Rev. Code § 4165.02(A)(7), (A)(11), (A)(12).  The Pilot Defendants make the same arguments to dismiss Ohio's Deceptive Trade Practices Act claims as they did to dismiss the Tennessee Consumer Protection Act claims.  *See* R. 126-4 at 51–53.  And for their part, FST generally makes the same arguments to oppose the motion to dismiss the Deceptive Trade Practices Act claims as it did to oppose the Tennessee Consumer Protection Act claims.  *See* R. 130 at 28–29.

The two statutes have identical language.  Accordingly, the Court should interpret their provisions consistently.  *Sierra Club v. Korleski*, 681 F.3d 342, 346 (6th Cir. 2012) ("[I]f two statutes use the same words in related contexts . . . one statute might be relevant in construing the other.").  The same reasons justify allowing FST to only bring a claim for misrepresenting price reductions.  FST pleads no facts in its complaint to suggest that Pilot Travel Centers, LLC misrepresented anything related to the properties of diesel fuel or that it advertised to the public.  And, as discussed in the context of its fraudulent misrepresentation claim, FST alleges facts with sufficient particularity under Rule 9(b) to give rise to a plausible claim that Pilot Travel Centers, LLC made misrepresentations in relation to the amount of price reduction it offered with respect to each gallon of fuel.  So FST's claim for violation of § 4165.02(A)(7) of Ohio's Deceptive Trade Practices Act survives the motion to dismiss.

**V.        NRT and KFC's Claims Against Individual Defendants.**

NRT and KFC named several employees of Pilot Corporation as defendants in this litigation ("individual defendants"), some of whom filed their own motions to dismiss.  *See, e.g.*, R. 121 (James Haslam); R. 122 (John Freeman); R. 123 (Brian Mosher and Arnold Ralenkotter); R. 125 (Mark Hazelwood); R. 152 (Karen Mann); R. 155 (Scott Wombold).  The individual defendants adopted the arguments that the Pilot Defendants set forth in their motion to dismiss.

Where there is no difference between the Pilot Defendants and the individual defendants, the results are the same.  So, for example, NRT and KFC cannot state a claim for conversion against any of the individual defendants.  NRT and KFC do not state facts in their complaint to show that they were in possession of the full rebate due under the contract.

Thus, under New Jersey law, they cannot maintain a claim for conversion against any defendant.

Similarly, NRT and KFC can state a claim for unjust enrichment against all the defendants. NRT and KFC specifically plead that the following defendants received benefits from the fuel-rebate program in the form of commissions and bonuses: Hazelwood, Freeman, Ralenkotter, and Wombold. R. 104 at 6, 7, 9. NRT and KFC also argue that the fraud led to higher profit margins which resulted in higher commissions and bonuses to all the individual defendants. *Id.* at 15. Accordingly, NRT and KFC pled sufficient facts to suggest that the individual defendants all received some benefit from the fraud that would be unjust to keep.

This leaves two broad categories of claims against the individual defendants: those sounding in fraud and those based on RICO statutes.

### A. NRT and KFC State Sufficient Facts to Allege that the Individual Defendants Committed Some Torts Sounding in Fraud.

The individual defendants object to NRT and KFC grouping them together in their complaints to allege that each defendant, for example, made a fraudulent misrepresentation. At this stage of the litigation, the Court construes the complaint in the light most favorable to the plaintiffs and accepts all their factual allegations as true. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009). Nevertheless, as explained below, NRT and KFC state claims sounding in fraud primarily against Scott Wombold.

### 1) The Plaintiffs State a Claim for Fraudulent Inducement, Fraudulent Misrepresentation, and Equitable Fraud Against Scott Wombold.

As discussed above, to claim fraud, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). And to state a claim for fraudulent inducement or fraudulent misrepresentation under New Jersey law, NRT and KFC must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages." *West v. IDT Corp.*, No. CIV.A.01-4372(WHW), 2008 WL 762459, at *11 (D.N.J. Mar. 19, 2008).

NRT and KFC contend that two sets of statements were fraudulent: (1) in-person solicitations and (2) monthly mailed statements that informed the plaintiffs that they were receiving the full amounts of their rebates when they were not. The first category of fraudulent statements—the in-person solicitations—occurred as follows: On November 19, 2008 in New Jersey, Tim Prins and Scott Wombold approached NRT and KFC. R. 104 at 9–10. Prins and Wombold told NRT and KFC that they would receive monthly rebate checks for fuel purchased from Pilot Flying J retailers. R. 104 at 9–13. They calculated the rebates would amount to a few cents per gallon or the difference between the retail price of fuel and the cost to Pilot plus a few cents. *Id.* NRT and KFC claim that Wombold knew or believed that his statements were false because he was aware that the Pilot Defendants had not previously paid rebates. *Id.* at 9. The plaintiffs also state that he intended for NRT and KFC to rely on those statements, and point to the fact that he benefitted from the fraud as a reason for his intent. *Id.* at 9, 26. Because NRT and KFC continued to purchase fuel after the solicitation but did not receive the full rebate, they state sufficient facts to show reliance and injury. Accordingly, NRT and KFC state a claim for fraudulent inducement against Wombold in sufficient detail to meet the requirements of Rule 9(b). And because the

substantive claim for fraudulent misrepresentation is identical to the claim for fraudulent inducement, NRT and KFC state a claim for fraudulent inducement against Wombold as well. *See Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-6590(SDW)(MCA), 2013 WL 1431680, at *7 (D.N.J. Apr. 9, 2013). Finally, because equitable fraud is a subset of the substantive count of fraudulent inducement without the state-of-mind component, NRT and KFC can bring a claim for equitable fraud against Wombold. *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981).

But NRT and KFC do not explain how any of the other individual defendants made fraudulent statements. They only allege that Pilot Travel Centers, LLC—not the individual defendants—made the misrepresentations in the mailed monthly statements and rebates. R. 104 at 24–25. So there are no facts to suggest that any of the individual defendants made monthly misrepresentations in the statements and rebates mailed to the plaintiffs. Accordingly, NRT and KFC cannot bring a claim for fraudulent inducement, fraudulent misrepresentation, or equitable fraud against the remaining individual defendants.

### 2) The Individual Defendants Do Not Succeed on Their Motion to Dismiss the Claim for Conspiracy to Commit Fraud.

The individual defendants also adopt the Pilot Defendants' argument to dismiss the count for conspiracy to commit fraud. *See* R. 121-1 at 2 (Haslam); R. 122-1 at 1 (Freeman); R. 123-1 at 2, 8–9 (Mosher and Ralenkotter); R. 125-1 at 1 (Hazelwood); R. 152 at 1 (Mann); R. 155-1 at 1 (Wombold). But, as discussed above, the Pilot Defendants argue that the claim for conspiracy to commit fraud should be dismissed because there is no underlying fraud. R. 126-4 at 37. That argument fails because the plaintiffs state a plausible claim that

the Pilot Defendants committed at least some fraudulent acts.  Accordingly, the individual

defendants cannot successfully dismiss the claims for conspiracy to commit fraud either.

> **3)** **NRT and KFC Do Not State Facts that Plausibly Allege that Any of the Individual Defendants Other than Wombold Aided or Abetted Fraud.**

NRT and KFC can show that the individual defendants should be liable for aiding and

abetting fraud by establishing facts that suggest (1) an underlying fraud, (2) the defendants'

knowledge of the fraud; and (3) substantial assistance or encouragement by the defendant in

the fraud.  *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (citing Restatement

(Second) of Torts § 876(b)).  Here, as discussed above, NRT and KFC state a claim that Pilot

Travel Centers, LLC fraudulently induced them to participate in the rebate agreement.  NRT

and KFC also allege that Pilot Travel Centers, LLC made monthly fraudulent

misrepresentations that the plaintiffs were receiving the full amount of the rebate.

But NRT and KFC do not state sufficient facts to make a plausible claim that the

individual defendants—other than Wombold—substantially assisted the fraud.   NRT and

KFC only allege that the individual defendants besides Wombold were involved in mailing

inaccurate rebates on a monthly basis.  *See* R. 104 at 17.  But as discussed above, the

fraudulent rebates are not acts of fraud because the rebates themselves are part and parcel of

the contract.   And the plaintiffs do not explain how reducing rebates would otherwise

substantially assist Pilot Travel Centers, LLC, in making separate fraudulent statements.  So

NRT and KFC do not state facts that plausibly suggest that the individual defendants

"substantially assisted" in the fraud.  Accordingly, their claims for aiding and abetting fraud

against the individual defendants other than Wombold also fail.

4)    **NRT and KFC Can Only State A Claim Under the New Jersey Consumer Fraud Act and Related Regulations Against Wombold.**

NRT and KFC do not claim that the individual defendants—with the exception of Wombold—made fraudulent solicitations, misrepresentations, or even aided in committing a fraudulent act.   As discussed above, the New Jersey Consumer Fraud Act considers solicitations to be advertisements under the Act.   And the plaintiffs identify the time and place where Wombold made misrepresentations about the amount of price reduction—that is, the rebate—that NRT and KFC would receive.  R. 104 at 11–13.  Because NRT and KFC do not identify any other defendants' solicitations or misrepresentations, only Wombold's conduct falls within the scope of the act.

B.    **NRT and KFC Do Not State a Claim for RICO But Do State a Claim for RICO Conspiracy Against the Individual Defendants Under the Federal and New Jersey RICO Statutes.**

To state a claim for RICO conspiracy, NRT and KFC must prove two things:  (1) the defendant "intended to further an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] criminal offense" and (2) he "adopt[ed] the goal of furthering or facilitating the criminal endeavor." *United States v. Fowler*, 535 F.3d 408, 421 (6th Cir. 2008); 18 U.S.C. § 1962(d); *see also State v. Ball*, 661 A.2d 251, 268 (N.J. 1993) (affirming that a conspiracy to violate the New Jersey RICO statute requires a RICO enterprise and an agreement to violate the New Jersey RICO statute).   Unlike a substantive RICO charge, a RICO conspiracy charge "does not require proof that the defendant committed any predicate acts." *Fowler*, 535 F.3d at 421; *see also Ball*, 661 A.2d at 268–69 (holding that the New Jersey RICO statute does not require a defendant to agree to personally commit predicate crimes).   As previously discussed, NRT and KFC plead a

70

substantive RICO claim against the Pilot Defendants and Propeller under federal and New Jersey law. The actions of the individual defendants show they committed acts that perpetuated the Pilot Defendants and Propeller's RICO enterprise with the intent to do so.

NRT and KFC state the following four facts that plausibly suggest that some of the individual defendants managed or knowingly carried out the fraudulent rebate-reduction scheme—the object of the RICO enterprise. First, they allege that in 2012, Haslam, Mosher, Ralenkotter, Hazelwood and Freeman planned an annual meeting with breakout sessions for teaching other employees to reduce rebates without detection. R. 104 at 6, 8. Second, those individuals planned teaching sessions to train employees—or directly taught other employees—how to participate in the rebate-reduction scheme and avoid detection. *Id.* at 8, 9, 10, 12, 38, 42–43. Third, NRT and KFC specifically allege Mosher told others to reduce rebates manually, and that Hazelwood in turn instructed Mosher to do so. *Id.* at 8, 57. And finally, NRT and KFC allege that Freeman hosted a meeting at his lake house to discuss how to perpetuate the fraudulent rebate scheme. *Id.* at 6. Together, these facts at least plausibly suggest that Haslam, Mosher, Ralenkotter, Hazelwood, and Freeman "adopt[ed] the goal of furthering or facilitating the criminal endeavor." *Fowler*, 535 F.3d at 418.

What about Karen Mann and Scott Wombold? NRT and KFC allege that those two defendants took on different roles. The plaintiffs claim that Mann knowingly reduced rebates owed to NRT and KFC. Mann allegedly attended a sales meeting where she learned to manually reduce rebates. R. 104 at 12. NRT and KFC allege that Mann personally manipulated the spreadsheet containing the discounts owed to them. *Id.* Wombold, the plaintiffs allege, solicited NRT and KFC to join the rebate-reduction program although he knew that the Pilot Defendants would not honor their rebate promises. *Id.* at 16. The

plaintiffs claim that Wombold knew that he was luring NRT and KFC into the scheme because he knew that the Pilot Defendants had previously reduced rebates and that they would continue to do so. *Id.* Taken together, these facts suggest that Mann and Wombold knowingly carried out the object of the enterprise—that is, to recruit customers to purchase fuel and lower their promised rebates. The facts are accordingly sufficient to establish that these individuals conspired to commit a RICO violation under both the federal and New Jersey statutes.

Where NRT and KFC's claims fail is their allegation that the individual defendants are RICO defendants under the federal and New Jersey RICO statutes. The RICO statutes require that a RICO defendant conduct or participate in the conduct of the enterprise through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c); N.J. Stat. Ann. § 2C:41-2(c). So the plaintiffs must show that the defendants engaged in at least two acts of racketeering activity, like mail fraud, to succeed on this claim. NRT and KFC describe how the individual defendants set up training sessions and meetings to perpetuate the rebate-reduction scheme. R. 104 at 6, 8. Nowhere in the complaint, FBI Affidavit, or the bill of particulars is it clear that the individual defendants used mail or wire fraud to commit those acts. Accordingly, the claim against them for a substantive RICO violation under the federal and New Jersey RICO laws fails. The same is true for defendants Mann and Wombold. The plaintiffs do not articulate how Mann and Wombold used the mails or wires in carrying out the business of the enterprise. Mann merely manipulated spreadsheets. And Wombold conducted an in-person solicitation. So the complaint lacks facts that suggest that Mann and Wombold committed at least two instances of mail or wire fraud in knowingly carrying out

the business of the enterprise.  The substantive federal and New Jersey RICO claims against

them fail.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1)    Pilot Corporation and Pilot Travel, LLC's motion to dismiss the amended complaints of the plaintiffs, R. 126, is

      **GRANTED IN PART** and **DENIED IN PART** as follows:

| Shoreline (R. 117) | Osborn (R. 25) | NRT/KFC (R. 104) | FST (R. 112) | HB (R. 113) |
|---|---|---|---|---|
| Conversion (Count I) is **GRANTED** | Breach of Contract (Count I) is **DENIED** | Breach of Contract (Count I) is **DENIED** | Fraud (Count I) is **DENIED** | Fraudulent inducement (Count I) **DENIED** |
| Federal RICO (Count II) is **GRANTED** | Conversion (Count II) is **GRANTED** | Unjust Enrichment (Count II) is **GRANTED** as to Pilot Corporation and **DENIED** as to Pilot Travel Centers, LLC | Breach of Contract (Count II) is **DENIED** | Breach of Contract (Count II) is **DENIED** |
| Conspiracy to Commit RICO (Count III) is **GRANTED** | Unjust enrichment (Count III) is **DENIED** | Conversion (Count III) is **GRANTED** | Violation of Ohio's Deceptive Trade Practices Act (Count III) is **DENIED** | Violation of Tennessee's Consumer Protection Act (Count III) is **DENIED** |
| Breach of Contract (Count IV) is **DENIED** | Promissory Fraud (Count IV) is **GRANTED** | Fraud (Count IV) is **DENIED** | Violation of Tennessee's Consumer Protection Act (Count IV) is **DENIED** | Unjust Enrichment (Count IV) is **GRANTED** |
| Fraud (Count V) is **DENIED**. | Fraudulent Misrepresentation (Count V) is **GRANTED** | Violation of the New Jersey Consumer Fraud Act (Count V) is **DENIED** | Unjust Enrichment (Count V) is **GRANTED** | Negligent Misrepresentation (Count V) is **DENIED** |
| Suppression (Count VI) is **GRANTED** | Deceit (Count VI) **GRANTED** | Violation of the New Jersey Consumer Fraud Act Regulations (Count VI) is **DENIED** | | Suppression (Count VI) is **GRANTED** |
| | Violation of the Tennessee Consumer Protection Act (Count VII) is **GRANTED** | Federal RICO (Count VII) is **DENIED** | | |
| | | Conspiracy to commit | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | Federal RICO (Count VIII) is **DENIED** |  |  |
|  |  | Conspiracy to Commit Fraud (Count IX) is **DENIED** |  |  |
|  |  | Breach of Good Faith and Fair Dealing (Count X) is **DENIED** |  |  |
|  |  | Fraudulent Inducement (Count XI) is **DENIED** |  |  |
|  |  | Aiding and Abetting Fraud (Count XII) is **DENIED** |  |  |
|  |  | Equitable Fraud (Count XIII) is **DENIED** |  |  |
|  |  | New Jersey RICO (Count XIV) is **DENIED** |  |  |

(2)   Propeller Corporation's motion to dismiss claims by NRT and KFC, R. 151, is **GRANTED IN PART** and **DENIED IN PART** as follows:

| Unjust Enrichment (Count II) | Conversion (Count III) | Fraud (Count IV) | Violation of the New Jersey Consumer Fraud Act (Count V) | Federal RICO (Count VII ) | RICO Conspiracy (Count VIII) | Conspiracy to Commit Fraud (Count IX) | Aiding and Abetting Fraud (Count XII) | Equitable Fraud (Count XIII) | New Jersey RICO (Count XIV) |
|---|---|---|---|---|---|---|---|---|---|
| The motion to dismiss as to this count is **GRANTED** | The motion to dismiss as to this count is **GRANTED** | The motion to dismiss as to this count is **GRANTED** | The motion to dismiss as to this count is **GRANTED** | The motion to dismiss as to this count is **DENIED** | The motion to dismiss as to this count is **DENIED** | The motion to dismiss as to this count is **DENIED** | The motion to dismiss as to this count is **GRANTED** | The motion to dismiss as to this count is **GRANTED** | The motion to dismiss as to this count is **DENIED** |

(3)     The motions to dismiss NRT and KFC's complaint filed by the following individual defendants, James Haslam (R. 121), John Freeman (R. 122), Brian Mosher and Arnold Ralenkotter (R. 123), Mark Hazelwood (R. 125), Karen Mann (R. 152), and Scott Wombold (R. 155), are **GRANTED IN PART** and **DENIED IN PART** as follows:

| | James Haslam (R. 121) | John Freeman (R. 122) | Brian Mosher and Arnold Ralenkotter (R. 123) | Mark Hazelwood (R. 125) | Karen Mann (R. 152) | Scott Wombold (R. 155) |
|---|---|---|---|---|---|---|
| **Unjust Enrichment (Count II)** | DENIED | DENIED | DENIED | DENIED | DENIED | DENIED |
| **Conversion (Count III)** | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED |
| **Fraud (Count IV)** | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED | DENIED |
| **Violation of the New Jersey Consumer Fraud Act (Count V)** | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED | DENIED |
| **Violation of the Advertising Regulations under the New Jersey Consumer Fraud Act (Count VI)** | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED | DENIED |

| Federal RICO (Count VII) | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED |
|---|---|---|---|---|---|---|
| Conspiracy to Commit Federal Rico (VIII) | DENIED | DENIED | DENIED | DENIED | DENIED | DENIED |
| Conspiracy to Commit Fraud (IX) | DENIED | DENIED | DENIED | DENIED | DENIED | DENIED |
| Fraudulent Inducement (Count XI) | N/A | N/A | N/A | N/A | N/A | DENIED |
| Aiding and Abetting Fraud (Count XII) | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED | DENIED |
| Equitable Fraud (Count XIII) | GRANTED | GRANTED | GRANTED | GRANTED | GRANTED | DENIED |
| New Jersey Civil RICO and RICO Conspiracy (Count XIV) | DENIED | DENIED | DENIED | DENIED | DENIED | DENIED |

This the 11th day of February, 2015.



Signed By:

_Amul R. Thapar_

United States District Judge