# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# COVINGTON DIVISION

| | |
|---|---|
| *In Re* **FLYING J REBATE CONTRACT LITIGATION (NO. II)** _____ This Document Relates to: *Wright Transportation, Inc. v. Pilot Corp., et al.* Case No. 2:14-cv-00068-ART | Master File No: 14-2515-ART The Honorable Amul R. Thapar **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT
## ADDING FRAUDULENT INDUCEMENT AGAINST
## PILOT TRAVEL CENTERS, LLC, AND JAMES A. HASLAM, III

COMES NOW Plaintiff, Wright Transportation, Inc. ("Wright" or "plaintiff"), in the above matter, through undersigned counsel, and Amends its previously filed Complaint to add the following claim of Fraudulent Inducement against defendants Pilot Travel Centers, LLC, and James A. Haslam, III, as follows:

Wright adopts and incorporates all factual statements, allegations, causes of action, jury demand, and relief requested as set forth in its Original Complaint, as well as the FBI Affidavit attached as Exhibit A, filed in The United States District Court for the Southern District of Alabama, Southern Division, on July 10, 2013,

1

styled *Wright Transportation, Inc. v. Pilot Corporation, et al.*, Case No. 1:13-cv-00352 ("Original Complaint").[1]

In supplementation thereof, Wright pleads the following the following additional facts:

1. On or about May of 2007, Kevin Hanscomb, Pilot Travel Centers, LLC's ("Pilot") Regional Sales Manager, met with Pat Wright, president/owner of Wright Transportation, Inc., ("Wright") in Mobile, Alabama, and made representations that included Wright receiving fuel discounts based on Pilot's actual fuel cost.

2. On or about May 14, 2007, Pat Wright was provided a letter from Kevin Hanscomb, which included representations that:

- Wright would receive fuel discounts of the *better of* Cost Plus $0.01 or Retail Minus $0.0425 at Pilot locations throughout the state of Alabama, as well as Biloxi, Mississippi and Midway, Florida, and the *better of* Cost Plus $0.025 or Retail Minus $0.0425 at all other Pilot locations.

- Zero transaction fee.

3. The May 14, 2007, letter (Bates No. Pilot-Wright-001550) is incorporated by reference as if fully set forth herein.

---

[1] This matter was transferred to this Honorable Court's Docket in connection with this Multi-District Litigation.

4.      On or about April of 2009, Kevin Hanscomb and John Freeman, Vice-President of Sales for Pilot, met with Pat Wright in Mobile, Alabama, and made representations that reiterated Pilot obtained the best deals in the industry and it was going to pass those savings along – cost was the actual amount paid by Pilot in acquiring diesel fuel. In addition, it was represented that Wright would receive additional fuel discounts of Cost Minus $0.02 at certain locations.

5.      On or about April 22, 2009, Pat Wright was provided a letter from Kevin Hanscomb, which included representations that

- Wright would receive fuel discounts of the *better of* Cost Minus $0.02 or Retail Minus $0.0425 at Pilot locations in Mobile, Alabama, Satsuma, Alabama, and Biloxi Mississippi.

6.      The April 22, 2009, letter (Bates No. Wright 06253) is incorporated by reference. Shortly thereafter, on or about May/June 2009, Kevin Hanscomb telephoned Pat Wright and confirmed that this discount applied to Wright's fuel purchases at all Pilot locations.

7.      Thereafter, intermittently, Pilot employees, including regional sales manager Christopher Andrews and/or Jason Holland, would contact Wright agreeing to provide additional discount above and beyond the *better of* Cost Minus $0.02 or Retail Minus $0.0425, such as on or about September 2012, Jason Holland and/or

3

Chris Andrews, met with Pat Wright in Mobile and represented that Wright's discount was Cost Minus $0.08.

8. On or about June 2012, Jason Holland and/or Chris Andrews met with Pat Wright in Mobile, Alabama, during which Pilot continued to promote the representations that, for purposes of Wright's fuel discount, Pilot was using its actual cost; that OPIS was Pilot's actual cost; and, no additional fees, charges or costs.

9. Following each representation, Pilot fraudulently and deceptively withheld the agreed upon discounts to Wright, did not utilize Pilot's actual fuel cost, utilized an artificial number or index, including OPIS, that is considerably higher than Pilot's actual cost, led Wright to believe the artificial number or index, including OPIS, was Pilot's actual cost, altered the agreed upon amount to be added or subtracted from "cost", did not disclose certain fees, charges or costs and made inaccurate representations regarding fees, charges or costs.

10. Pilot's representations were false and intended to induce Wright into entering and continuing fuel discount agreement (s) and fuel purchases, as well as facilitate Pilot withholding discounts, Wright over paying, and Wright paying additional undisclosed fees, charges or costs

11. From June 2007 to the present Pilot provided Wright electronically with daily billing/pricing to deceive Wright regarding the forgoing; to fraudulently and deceptively withhold or reduce Wright's discounts without its knowledge or consent;

and, induced Wright to over pay monies and fees, charges or costs not owing or due Pilot under the discount agreement (s).

12.   Pilot conducted meetings and classes with its employees in order to teach and implement the misrepresentations and scheme. *See e.g.,* F.B.I. Affidavit, para 61, 62, 63, & 68.

13.   Pilot's misrepresentations and scheme occurred with the knowledge of Pilot's Chief Executive Officer James A. Haslam, III, ("Haslam").  The fraud related activities were discussed during sales meetings in Knoxville, Tennessee, in which Haslam was present (F.B.I. Affidavit, para. 9, p. 10 of 120 & para. 71, p. 66 of 120); Haslam thanked Brian Mosher, Director of Sales, for saving Pilot money through withholding customer rebate and discounts (F.B.I. affidavit, para. 23, p. 21 of 120); Haslam has looked carefully at every customer's profit and loss report showing the increased profit from the fraud.  (F.B.I. affidavit, para. 78, p. 72 of 120); and, Pilot employees openly discussed Haslam knowledge of deceptive activity (F.B.I. affidavit, para.81, p. 78 of 120).

14.   In addition, Salesforce or Trip Reports are forwarded to Haslam, (F.B.I. affidavit, para, 59, p. 46 of 120), which would clearly evidence Pilot deceiving Wright and others.

15.   Pilot and Haslam knew of, participated in and benefited from Pilot's scheme because it increased Pilot's profitability and personally benefited Haslam's

finances, including his salary, incentives, bonuses, benefits, share value, dividends, trust, distributions, loans and access to credit.

16. After the F.B.I. Affidavit was unsealed in 2013, Haslam made representations to Wright to fraudulently induce Wright and others to continue purchasing diesel fuel from Pilot and continue deceptive fuel discount agreement(s).

17. On or about July 12, 2013, Haslam electronically provided a letter to Pat Wright, which included representations that Pilot was "proactively confirming all of its pricing relationships with its diesel customers…taking aggressive measures to restore, preserve and protect our customer relationships…continue to work very hard every day to overcome past issues and ensure they are not repeated." The letter, Bates Nos. Wright 06152 – Wright 06156, is incorporated by reference.

18. On or about July 25, 2013, Haslam electronically provided a letter to Pat Wright, which included representations regarding "a new website to provide information to you regarding the rebate program and the federal investigation…We take this investigation seriously and are taking the appropriate steps to rebuild your trust…make information readily available to you and reaffirm your confidence in us." The letter, Bates No. Wright 06151, is incorporated by reference.

19. On or about October 7, 2013, Haslam electronically provided a letter to Pat Wright, which included representations of an update regarding "the Five Point

Plan we put into place on April 22, 2013 to regain the trust and confidence of our customer…We continue to take this investigation seriously and want to ensure the appropriate steps are taken to rebuild your trust…We also want to keep the lines of communication open…we have done our best to investigate the allegations…identify any wrongdoing, and to assure our customers that we will not tolerate that kind of behavior anywhere in our company and we will make it right 100% any errors we discover…a class action remedy to guarantee every one of our rebate and discount customers will receive 100% recovery plus interest on any shortfall in their account without any legal or other cost to the customer…allows our customers to be made whole sooner rather than later…We will not be satisfied until we have identified every single discrepancy, made every affected customer whole, and regained the confidence of all of our customers." The letter, Bates Nos. Wright 06146-Wright 06150, is incorporated by reference.

20.     October 17, 2013, David Hughes, Pilot's Vice-President of Sales, provided Pat Wright a letter, which included representations that Pilot conducted an "account reconciliation," "quality assurance review", and "internal audit" of Wright's account. The letter represented that there was a "potential discrepancy" and enclosed a "summary schedule" of the audit along with a check. The letter, Bates Nos. Wright 06258-Wright 06262, is incorporated by reference.

7

21. On October 21, 2013, David Hughes, provided Pat Wright a letter, which included representations that "After conducting our extensive review, we are pleased to inform you that our internal audit of your account(s) listed did not show any discrepancies in your negotiated pricing structure." The letter, Bates No. Wright 6114, is incorporated by reference.

22. Pilot and Haslam knew that the purported audits were false, grossly inaccurate and deceptive, including utilizing a higher OPIS index average for "cost" rather than Pilot's lower actual cost, altering the pump fee, and adding certain undisclosed and inaccurate fees, charges or costs. The letters withheld this information.

23. On or about October 24, 2013, Jason Holland met with Pat Wright in Mobile, Alabama, and Mr. Wright asked for information regarding Pilot's purported audit and its account. Although Pilot represented that the information would be provided, it was not. Instead, Pilot intentionally withheld this information to deceive Wright. Jason Holland's memo, Bates No. Wright 06145, is incorporated by reference.

24. On or about July 14, 2014, Haslam electronically provided a letter to Pat Wright, which included representations that "Because of our commitment to doing the right thing and our cooperation, Pilot Flying J will not be prosecuted…continuing our efforts to rectify the damage done, regaining your

trust…We have put the proper procedures in place to prevent this from happening again."

25. Haslam's representations were false and intended induce Wright into entering and continuing fuel discount agreement (s) and fuel purchases, as well as facilitate Pilot withholding discounts, Wright over paying, and Wright paying additional undisclosed fees, charges or costs.

26. Following each representation Pilot and/or Haslam fraudulently and deceptively withheld the agreed upon discounts to Wright, did not utilize Pilot's actual fuel cost, utilized an artificial number or index, including OPIS, that is considerably higher than Pilot's actual cost, led Wright to believe the artificial number or index, including OPIS, was Pilot's actual cost, altered the agreed upon amount to be added or subtracted from "cost", did not disclose certain fees, charges or costs and made inaccurate representations regarding fees, charges or costs.

27. Wright was injured or damaged as a direct and proximate result of Pilot and Haslam's representations, fraudulent inducement and actions.

## COUNT IX – FRAUDULENT INDUCEMENT
## (AGAINST PILOT AND HASLAM)

28. The preceding factual statements and allegations are incorporated by reference.

29. Haslam and Pilot through its employees made each and all of the forgoing representations to Wright with the intent to deceive Wright and with no

9

intention at the time the representations were made to carry them out. *See Evans v. Adam's Rib, Inc.,* 267 So.2d 448, 450 (Ala. 1972).

30. Each representation was intended to fraudulently and deceptively induce Wright to continue purchasing fuel from Pilot, increase the amount of fuel purchased from Pilot and/or enter discount agreement/contract (s).

31. Following each representation, Pilot fraudulently and deceptively gave Wright less than the promised discount, over charged Wright and caused Wright to pay Pilot monies not owing or due.

32. Wright has been damaged as a direct and proximate result of Pilot's fraudulent inducement, including being deprived of the agreed upon discount, paying Pilot monies not owing or due, increased fuel cost, decreased profit, decreased cash flow, added debt, and other incidental and consequential damages.

WHEREFORE, Wright seeks relief against Pilot and Haslam, separately and severally, in the form of actual damages, consequential damages, incidental damages and punitive damages in an amount to be determined by a struck jury, plus pre and post-judgment interest at the highest legal rates, attorney fees, litigation expenses, costs of court, and any other and further relief this Honorable Court may deem appropriate, the premises considered.

## JURY DEMAND

Plaintiff, Wright Transportation, Inc. respectfully demands a trial by struck jury.

*/s/Stephen M. Tunstall*
Stephen M. Tunstall

Respectfully Submitted,

/s/Stephen M. Tunstall
**Stephen M. Tunstall** (TUNSS4180)
STEPHEN M. TUNSTALL, P.C.
Post Office Box 152
Mobile, Alabama 36601
Tel: (251)432-2221
Fax: (251)432-2218
stephentunstall@yahoo.com
**Attorney for Wright Transportation, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May 2015, I electronically filed the foregoing via the Court's CM/ECF System which will automatically send a copy to all attorneys of record in this case.

*/s/Stephen M. Tunstall*
Stephen M. Tunstall